NADOLINSKI, Plaintiff in error, v. STATE, Defendant in error.

*No. State 132. Argued February 6, 1970.—Decided March 3, 1970.*
(Also reported in 174 N. W. 2d 483.)

262

For the plaintiff in error there was a brief by *Roland J. Weber* and *Weber & Raithel*, all of Milwaukee, and oral argument by *Roland J. Weber*.

For the defendant in error the cause was argued by *Terence T. Evans*, assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren*, attorney general, *William A. Platz*, assistant attorney general, and *E. Michael McCann*, district attorney.

BEILFUSS, J. Issues raised by the defendant are:

(1) Did the trial court err when it refused to dismiss the action because of an alleged unauthorized entry into defendant's home?

(2) Was illegally obtained evidence used against defendant during the trial?

(3) Did the trial court err in not ordering a mental examination pursuant to sec. 957.13, Stats., on the day of the trial?

(4) Was the sentence improper?

(5) Should this court exercise its discretionary power under sec. 251.09, Stats., and reverse because of a probable miscarriage of justice?

The defendant presented the trial court with a motion to dismiss this case prior to the trial on the ground

"[t]hat the Milwaukee Police Department, without reason, cause or warrant, physically broke down the door of the defendant's home and arrested him contrary to the Fourth Amendment to the Constitution of the United States." Officer McKale specifically denies breaking down the door and testified that he pounded on the door for three or four minutes before the defendant opened it and admitted the police officers. The defendant stated that he was asleep when the police "jimmied" the door open and told him he was under arrest.

The defendant concedes in his brief that the matter of credibility of his testimony juxtaposed with that of Officer McKale was for the trial court in denying the motion for dimissal. He insists, however, that the physical facts of the arrest situation support his testimony and render that of the arresting officer incredible. In support of this proposition he points to this court's opinion in McCarthy v. Thompson (1949), 256 Wis. 113, 40 N. W. 2d 560, an automobile accident case, wherein it was said at page 116 that "physical facts may at times speak so directly of the actual situation that they may overcome the testimony of a witness." The physical fact relied on by Nadolinski was his assertion that the policeman claimed he found the toilet still flushing after the wait at the door and the placing of the defendant under arrest. An examination of the policeman's testimony discredits the claimed physical fact evidence of the defendant:

"Q. Now, in what point of time was it when you made this arrest as when you took the film out of the toilet bowl?

"A. I went right after placing him under arrest, I went to the bathroom right away because the water was still sort of spinning in the bowl.

"Q. Now, was this film just rolling in the bowl?

"A. It was laying there, it wasn't rolling, the water wasn't spinning that hard anymore where it would propel

the film contained in the bowl, it—but there was movement yet."

Even if the policeman's testimony was rendered incredible, the state points out that if the police have probable cause to arrest without a warrant they may break the door to effect the arrest after announcing their purpose in demanding admission.[2] The remedy for the use of excessive force in making an arrest may be a civil action for damages, but not dismissal of the criminal charge for which he was arrested. The police in this instance had probable cause to arrest the defendant and the forced entry (if in fact it was) does not compel a dismissal of the charge.

The photographs taken by Nadolinski of Dale Krogman at the beach were not received in evidence by the trial judge upon the ground they were immaterial. The only testimony elicited from the state's witnesses respecting the film pertained to the lakeshore meeting of the defendant and the Krogman boy. This fact was admitted by the defendant on direct examination when he testified that he met the boys at the beach and took a picture of them.

No motion to suppress the testimony regarding the film appears in the record. The state is correct in stating that no objection to the admissibility of the officer's testimony was made by the defendant at the trial. An objection to viewing the film was sustained, one as to the relevance was sustained, and three objections to leading questions regarding the film were sustained. No other attempt was made to keep the testimony out. As stated in *Collier v. State* (1966), 30 Wis. 2d 101, 104, 140 N. W. 2d 152, "[i]t is one of the most elementary rules of evidence that an objection must be made as soon as the opponent might reasonably be aware of the ob-

---

[2] *See Miller v. United States* (1958), 357 U. S. 301, 78 Sup. Ct. 1190, 2 L. Ed. 2d 1332.

jectionable nature of the testimony. . . ." Failure to so object results in a waiver of any contest to that evidence. *See Collier, supra,* page 105.

The cases cited by defendant on search and seizure are all irrelevant since they pertain to the suppression of illegally obtained evidence. Even if the film was obtained in violation of the fourth amendment to the United States Constitution the testimony pertaining to it was not objected to nor sought to be suppressed by defendant and he, in fact, amplified it by testifying about the pictures on direct examination. The testimony about the film was probative of nothing more than Nadolinski's presence at the beach, which he admitted. It was not used as evidence of the alleged acts with the complainant.

In any event, the pictures themselves were not incriminating and in view of defendant's statement on direct examination that he took them, reference and an admission into the evidence of a reference to them could not be prejudicial error if error at all.

The defendant was examined pursuant to sec. 957.13 (1), Stats.,[3] approximately two and one-half months prior to trial to determine his mental capacity to stand trial and was found sufficiently capacitated to act for himself based upon the findings and testimony of two psychiatrists appointed by the court. Immediately preceding the trial of this matter the defendant requested a further examination by doctors of his own choosing. No plea of insanity was entered; defendant alleged only that he felt the first examination was inadequate.

No authority on the issue of a second examination has been presented by either side. The three principal arguments waged by the state are, first, that the determination made by Judge O'CONNELL in early November was an adequate test of the defendant's ability to stand trial, and secondly, that the request was not timely, since there were "50 to 60 jurors" waiting in the courtroom. In

---

[3] *See* footnote 1.

addition, it is urged that the defendant is entitled to only one examination as a matter of right, subsequent inquisitions being discretionary.

There is not sufficient showing here that the mental condition of the defendant was any different on the day of trial than it was at the date of his examination about two months before when he was found to be competent to stand trial.

The trial lasted only a few hours and the trial judge remarked, "I have observed the defendant during the course of the trial and feel that he was capable in assisting in his own defense." This observation bolsters the conclusion that the trial court did not have reliable information presented to it just before the trial that the defendant was probably insane or feebleminded. We find no error in the trial court's refusal to grant the second mental examination of the accused to test his ability to stand trial.

The sentence imposed by the circuit court was a five-year term with the Wisconsin State Prison at Waupun the designated reception center. A presentence investigation was made by the H&SS Department pursuant to sec. 959.15, Stats. The department's recommendation was that Nadolinski be handled under the Criminal Code as provided in sec. 959.15 (5).

The defendant cites language of this court in *State v. Sorenson* (1966), 31 Wis. 2d 368, 142 N. W. 2d 785, to the effect that the trial court is obligated to commit the defendant to the department when it has recommended specialized treatment. The holding in *Sorenson* was premised upon language of *State ex rel. Volden v. Haas* (1953), 264 Wis. 127, 58 N. W. 2d 577, which was subsequently modified in *Huebner v. State* (1967), 33 Wis. 2d 505, 147 N. W. 2d 646. *Huebner* held that due process required a hearing on the department's recommendation for specialized treatment and thus, of necessity, the department's recommendation could not be mandatory on

the court's sentencing proceedings. Therefore, even if the department's report could be construed as recommending some form of special treatment, the sentence imposed is still within the discretion of the trial court and reversible only for an abuse of that discretion. *State v. Tuttle* (1963), 21 Wis. 2d 147, 124 N. W. 2d 9.

In any case, the defendant's argument ignores the plain recommendation of the department. The report states that Nadolinski should be handled under the Criminal Code. An inference is made that psychiatric care is needed, but the examiners decline to make any recommendation other than the one suggesting incarceration.

We are of the opinion the sentence was proper and within the discretion of the trial court.

Defendant premises a claim that justice has probably miscarried, thus entitling him to a new trial under sec. 251.09, Stats., on two factors. First, he realleges that his constitutional rights were violated by the search and seizure in his apartment. That argument has been fully dealt with above. Secondly, he asserts that the failure of the H&SS Department to provide the medical treatment suggested as appropriate in the presentence report should entitle him to resentencing. If he is truly suffering mental aberrations, as alleged, there are adequate statutory provisions for his transfer to Central State Hospital for treatment.

As stated in *Commodore v. State* (1967), 33 Wis. 2d 373, 383, 147 N. W. 2d 283, the authority under sec. 251.09, Stats., "is exercised with 'some reluctance and with great caution' and only in the event of a probable miscarriage of justice."

We find no probable miscarriage of justice and, therefore, decline to grant a discretionary reversal under sec. 251.09, Stats.

*By the Court.*—Judgment affirmed.