STATE of Wisconsin, Plaintiff-Respondent,

v.

Jaime MONJE, Defendant-Appellant.†

Court of Appeals

*No. 81–300. Submitted on briefs August 6, 1981.—*
*Decided September 15, 1981.*
(Also reported in 312 N.W.2d 827.)

† Petition to review granted.

For the defendant-appellant the cause was submitted on the briefs of *Jack E. Schairer*, senior assistant public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *Sally L. Wellman*, assistant attorney general.

Before Gartzke, P.J., Bablitch, J., and Dykman, J.

DYKMAN, J.   Defendant was arrested in Illinois by a Beloit, Wisconsin city police officer who brought him back to Wisconsin to stand trial for attempted murder and armed robbery. He appeals from an order denying his postconviction motion alleging that the trial court did not acquire personal jurisdiction because he was illegally arrested. We agree that the court did not acquire jurisdiction and accordingly reverse.

A warrant for defendant's arrest was issued May 4, 1979 by a Rock County judge. Later that day, Beloit police officer Keith Hein was riding in a squad car with a South Beloit, Illinois police officer when Hein saw defendant standing in a parking lot in South Beloit. Officer Hein took defendant to the South Beloit Police Department where he executed the arrest warrant.[1] De-

---

[1] Defendant argues that he was arrested in the parking lot rather than at the police station. The trial court made no finding

fendant was read his *Miranda* rights and was told that he could come back to Wisconsin voluntarily or be held for arraignment before an Illinois judge. Defendant said that he would go back to Wisconsin since he was already under arrest. Defendant also executed a waiver form, although he testified he did not understand what he was signing and the court made no finding that this document reflected an intelligent and voluntary waiver of his rights.[2]

Defendant moved to dismiss prior to the preliminary examination on the ground that the court lacked personal jurisdiction because he had been illegally arrested. The motion was denied without a hearing. Defendant objected to the denial of the motion again at the conclusion of the preliminary, and was told that he had preserved his objection and could renew the motion later if he

in this regard. It does not matter for the purpose of this opinion where he was arrested, since both locations are in Illinois. There is no dispute that Officer Hein performed the arrest.

[2] We conclude that the trial court lacked personal jurisdiction over defendant because he was arrested by an officer who had no authority to make the arrest. We do not consider the related issue of whether failing to take defendant before an Illinois magistrate as required by the Uniform Criminal Extradition Act before transporting him to Wisconsin also rendered the arrest or extradition proceeding illegal and deprived the trial court of personal jurisdiction over defendant. *See* sec. 976.03(10), Stats. The state contends, in an argument relegated to a single paragraph in a footnote to its brief, that defendant's appearance before the trial court was voluntary, and the court therefore acquired jurisdiction. Defendant entered a special appearance prior to the preliminary examination to object to the trial court's jurisdiction over him because of his illegal arrest. A voluntary appearance acknowledges the court's jurisdiction over the defendant's person. A defendant is not making a voluntary appearance when he enters a special appearance in order to object to the court's jurisdiction over his person. This is true whether defendant was unlawfully arrested in the State of Wisconsin or elsewhere. Defendant therefore did not make a voluntary appearance sufficient to bestow personal jurisdiction upon the trial court.

wished to do so. Defendant subsequently raised the issue before the trial court by means of a petition for a writ of habeas corpus. At the conclusion of an evidentiary hearing, the petition was dismissed. At trial, defendant was acquitted of attempted murder but convicted of armed robbery. Defendant raised the jurisdictional issue again in a postconviction motion, but that motion was also denied. The state concedes that defendant has properly preserved the jurisdictional issue for appeal.

The dispositive issue on appeal is whether the trial court acquired personal jurisdiction over defendant who was arrested in Illinois by a Wisconsin police officer. Because we conclude that the court lacked such jurisdiction, it is unnecessary to consider a second issue raised by defendant on appeal.

Officer Hein had no authority to execute the arrest warrant in Illinois. The authority of a city police officer is defined by sec. 62.09(13)(a), Stats., which provides in relevant part:

The chief and each policeman shall possess the powers, enjoy the privileges and be subject to the liabilities conferred and imposed by law upon constables, and be taken as included in all writs and papers addressed to constables; shall arrest with or without process and with reasonable. diligence take before the municipal judge or other proper court every person found *in the city* engaged in any disturbance of the peace or violating any law of the state or ordinance of such city . . . . (Emphasis added.)

Section 60.54, Stats., which defines the duties of a constable, states in pertinent part: "The constable shall: (1) Serve *within his county* any writ, process, order or notice, and execute any order, warrant or execution lawfully directed to or required to be executed by him by any court or officer." (Emphasis added.) Section 968.04(4), Stats., providing for the service of arrest warrants, states in relevant part: "(a) The warrant shall be di-

rected to all law enforcement officers of the state. A warrant may be served anywhere *in the state."* (Emphasis added.)

None of these statutes authorizes a city police officer to execute an arrest warrant outside the State of Wisconsin. The attorney general has rendered an opinion that the statutes authorize "city police officers [to] go anywhere *in the state* to execute warrants but that is the limit of their authority." (Emphasis added.) 34 Op. Att'y Gen. 44, 45 (1945). This is not a case of fresh pursuit which could bring sec. 66.31, Stats., into play.

The state, while not conceding that Officer Hein had no authority to arrest defendant in Illinois, does not draw our attention to any statutes or common law which suggest that he had such authority. The common law is to the contrary. "As a general principle, well established in most jurisdictions . . . a public officer for a particular county or municipality has no official power to arrest offenders beyond the boundaries of the county or district for which he is appointed." *People v. Martin,* 225 Cal. App. 2d 91, 93, 36 Cal. Rptr. 924, 926 (1964). An arrest warrant has no validity outside the state in which it is issued, and thus may not be executed in another state. *Drake v. Keeling,* 230 Iowa 1038, 299 N.W. 919, 922 (1941), and authorities cited. *See also* Annot., 61 A.L.R. 377, 380 (1929), stating, "[a] warrant of arrest issued in one state may not be executed in another state, for it has no validity beyond the boundaries of the state by whose authority it was issued."

If a peace officer is "appointed to act only within a limited district, he has no greater privilege outside of such district than a private citizen." *Restatement (Second) of Torts* sec. 121, comment *a* at 204 (1965). *Accord, Kendall v. Aleshire,* 28 Neb. 707, 45 N.W. 167, 168–69 (1890) ("It was the duty of the sheriff to arrest . . .

defendant in said warrant, if found within this state. It was not his duty, nor had he the power, to arrest him out of the state. When he entered the state of Kansas, his acts were those of an individual, without either the virtue of office or the color of office . . . .").

We thus conclude that Officer Hein had no authority to execute the Wisconsin arrest warrant in Illinois. The unauthorized arrest was therefore unlawful.

Our inquiry next focuses upon whether the unlawful arrest deprived the trial court of jurisdiction over the person. Most jurisdictions would routinely answer this question in the negative. Were we free to do so, we would follow the majority rule. In Wisconsin, however, the answer is more difficult.

The majority of courts have taken the position that the invalidity of the original arrest, even though seasonably raised, is immaterial to the jurisdiction of the trial court to proceed with the case. This court, however, while holding that the illegality of an arrest does not affect the trial court's subject-matter jurisdiction, has held that personal jurisdiction is dependent upon the defendant's physical presence before the court pursuant to a properly issued warrant, a lawful arrest or a voluntary appearance.

*Walberg v. State*, 73 Wis. 2d 448, 457–58, 243 N.W.2d 190, 195 (1976). Defendant did not make a voluntary appearance.[3] The question is thus whether a properly issued warrant which is executed by means of an unlawful arrest deprives the court of personal jurisdiction.

The *Walberg* rule seems to be intended "to improve police practices and to assure that arrests will be made on a proper showing of probable cause as determined by an independent and impartial magistrate." *State ex rel. La Follette v. Raskin*, 30 Wis. 2d 39, 54–55, 139 N.W.2d

---

[3] *See* note 2, *supra.*

667, 676 (1966).[4] The rule has been applied in a number of settings, although never to the situation presented here. It has rarely been analyzed in terms of its policy and its parameters are thus unclear.

In *State ex rel. Furlong v. Waukesha County Court,* 47 Wis. 2d 515, 525–26, 177 N.W.2d 333, 339 (1970), police officers without a warrant uncovered evidence during a search that led to the defendant's arrest. The court reasoned that absent the fruits of the illegal search, the arresting officer had no probable cause to arrest. The court held that a warrantless arrest without probable cause deprived the trial court of personal jurisdiction. This holding is consistent with a policy of improving police practices by requiring warrantless arrests to be made only upon probable cause.

In *Laasch v. State,* 84 Wis. 2d 587, 596–97, 267 N.W.2d 278, 284 (1978), the arresting officer had no arrest warrant but had probable cause to arrest the defendant. He entered her home without her consent and arrested her there. The supreme court held that absent exigent circumstances, it is unlawful to enter a dwelling without consent to effect a warrantless arrest on probable cause. The court concluded that the trial court did not acquire personal jurisdiction over the defendant because the arrest was unlawful. The police practice which the supreme court sought to improve by this holding was not directed toward a requirement of probable cause, but rather focused on the requirement of obtaining a warrant when one was needed to effect a valid arrest.

The arrest warrant in *State v. Williams,* 47 Wis. 2d 242, 257, 177 N.W.2d 611, 619 (1970), was defective because the complaint failed to state probable cause. The

---

[4] The Wisconsin rule therefore appears to be a type of exclusionary rule which Justice Heffernan has said has "become suspect, not because it does not possess merit, but because its efficacy is doubtful." *Conrad v. State,* 63 Wis. 2d 616, 634, 218 N.W.2d 252, 262 (1974).

court concluded that the entry into the defendant's apartment and his subsequent arrest were "without proper legal sanction" and therefore "without properly conferred jurisdiction." The underlying policy again was to require arrests to be made on probable cause.

A district attorney issued the arrest warrant challenged in *State ex rel. White v. Simpson,* 28 Wis. 2d 590, 137 N.W.2d 391 (1965). Although the warrant was supported by probable cause, the defendant moved to dismiss for lack of jurisdiction. The motion was denied in the trial court. The supreme court reversed, holding that a district attorney is not a detached and neutral magistrate who may constitutionally issue an arrest warrant. The policy underlying this decision is to effect the requirement of an independent and impartial magistrate as the determiner of probable cause.

In *State v. Monsoor,* 56 Wis. 2d 689, 693–94, 203 N.W. 2d 20, 22–23 (1973), an arrest was made pursuant to a warrant supported by probable cause. The defendant attacked the arrest by claiming that the officer entered the premises without knocking and announcing his purpose. The supreme court relied on *Nadolinski v. State,* 46 Wis. 2d 259, 267, 174 N.W.2d 483, 486 (1970), in which the court stated:

The remedy for the use of excessive force in making an arrest may be a civil action for damages, but not dismissal of the criminal charge for which he was arrested. The police in this instance had probable cause to arrest the defendant and the forced entry (if in fact it was) does not compel a dismissal of the charge.

*Nadolinski* therefore distinguished "between an arrest, which in one respect was illegal, but nevertheless valid because based upon probable cause." *State v. Ewald,* 63 Wis. 2d 165, 169, 216 N.W.2d 213, 216 (1974). This distinction caused the court in *Monsoor* to conclude that the trial court had acquired jurisdiction over the defendant.

The court stated that it "refused to hold an illegal execution of a valid arrest warrant sufficient to result in a loss of personal jurisdiction over the accused." *Monsoor,* 56 Wis. 2d at 694, 203 N.W.2d at 22.

The policy of improving police practices which underlies the *Walberg* rule therefore does not seem to extend to practices concerning the manner in which an otherwise lawful arrest is made. The state places much reliance on *Monsoor,* arguing that this too is a case where a valid arrest warrant was illegally executed.[5] The state seeks to distinguish this case from those in which there was no probable cause or in which someone other than a neutral or detached magistrate issued the arrest warrant.

The distinction cannot be so easily drawn. In *Furlong, Laasch, Williams* and *Simpson,* the arresting officer had no authority to arrest. This was true in *Furlong* and *Williams* due to the absence of probable cause. The supreme court has indicated that an arrest made without probable cause is an action taken without lawful authority. *State v. Barrett,* 96 Wis. 2d 174, 181, 291 N.W. 2d 498, 501 (1980). In *Simpson,* there was no authority to arrest because the warrant which would have conferred such authority was constitutionally defective. Authority to arrest was absent in *Laasch* because a warrant was necessary to authorize entry into the defendant's dwelling.

In *Monsoor,* the arresting officer had a valid arrest warrant supported by probable cause and therefore had authority to arrest. The manner in which he executed the warrant, while possibly illegal, did not deprive him of that authority. The supreme court consequently found that the trial court had jurisdiction over the defendant's person.

[5] *State v. Monsoor,* 56 Wis. 2d 689, 203 N.W.2d 20 (1973), has not been cited by a Wisconsin appellate court as authority for its holding as to personal jurisdiction since it was written, though the later cases of *Walberg* and *Laasch* discussed that issue.

■

It appears from the cases applying the *Walberg* rule that the policy which underlies it is aimed at deterring the police from making unauthorized arrests, not simply those which are in some broad sense illegal. If the officer has authority to effect the arrest, the *Walberg* rule does not apply.

■

Application of that policy to this case compels the conclusion that the trial court lacked personal jurisdiction over defendant. Officer Hein had no authority to execute the arrest warrant in Illinois. This is not simply an illegal execution of a valid arrest warrant, as in *Monsoor*. The warrant was valid only in Wisconsin. It was not valid to authorize defendant's arrest outside the boundaries of this state. Defendant's arrest pursuant to the warrant was unlawful. Attempting to limit the *Walberg* rule by distinguishing virtually indistinguishable cases is unconvincing and leads to senseless litigation. We conclude the trial court erred in denying defendant's motion to dismiss for lack of personal jurisdiction.

Dicta in two supreme court cases suggests a contrary holding.[6] In *Baker v. State,* 88 Wis. 140, 147, 59 N.W. 570, 572 (1894), the court stated:

It is alleged in the plea in abatement put in just before the last trial, in effect, that the trial court was without jurisdiction because Baker was brought into Ashland county from Michigan forcibly and without extradition papers. Assuming such to be the facts, still that would not have deprived the trial court of jurisdiction. *Ker v. People,* 110 Ill 627, affirmed, *Ker v. Illinois,* 119 U.S. 436 [(1886)]; *Mahon v. Justice,* 127 U.S. 700 [(1888)]. In each of these cases the prisoner was kidnapped and then brought within the jurisdiction of the trial court.

---

[6] The state places additional reliance on *State v. Ewald,* 63 Wis. 2d 165, 216 N.W.2d 213 (1974). The court's personal jurisdiction over the defendant was not challenged in that case. Only a constitutional issue was presented. *Ewald* is therefore not helpful in resolving the issue before us.

The court went on to hold that the defendant voluntarily came within the jurisdiction of the trial court. The court therefore concluded that "the question presented is really not in the case" and did not decide it. *Baker,* 88 Wis. at 147, 59 N.W. at 572.

The court's reliance upon *Ker v. Illinois,* 119 U.S. 436 (1886), and *Mahon v. Justice,* 127 U.S. 700 (1888), for the proposition that a court has jurisdiction over a defendant who was kidnapped and brought into the state, was misplaced. Those cases held only that the defendant's right to due process of law was not violated in that situation. The Supreme Court specifically declined to decide the jurisdictional question.

The question of how far his forcible seizure in another country, and transfer by violence, force or fraud to this country, could be made available to resist trial in the state court, for the offense now charged upon him is one which we do not feel called upon to decide, for in that transaction we do not see that the Constitution, or laws, or treaties, of the United States guarantee him any protection.

*Ker,* 119 U.S. at 444. *See also Mahon,* 127 U.S. at 715. The question of jurisdiction is one of state law. The court in *Baker* did not address that question with resort to state law precedents.

In *State ex rel. La Follette,* 30 Wis. 2d at 46, 139 N.W. 2d at 671, the court stated: "Where a person has been forcibly abducted and taken from one state to another to be tried for a crime the jurisdiction of the court to try that person is not impaired." The court relied on *Frisbie v. Collins,* 342 U.S. 519 (1952), in support of that statement. The issue in *La Follette* concerned an arrest warrant which was issued by a deputy clerk of court. The court held that any defect in the warrant was waived by entering an appearance without objecting to the court's jurisdiction. The case had nothing to do with

a forcible abduction. *Frisbie,* which did concern a forcible abduction, merely reaffirmed the rule of *Ker*—that there is no constitutional (as opposed to jurisdictional) barrier to trying a defendant under such circumstances. That holding was acknowledged and accepted in *Walberg,* 73 Wis. 2d at 455, 243 N.W.2d at 194.[7]

The dicta in *La Follette* and *Baker* must yield to a consistent application of the *Walberg* rule as previously applied by the supreme court. We find no rational ground upon which to distinguish the unauthorized arrest in this case from the unauthorized arrests in other cases which have resulted in a deprivation of jurisdiction. We therefore conclude that the *Walberg* rule applies to this fact situation, and accordingly reverse defendant's conviction.

*By the Court.*—Order reversed.

---

[7] The court in *Walberg,* 73 Wis. 2d at 459, 243 N.W.2d at 196, stated that *La Follette* followed *Frisbie* on due process grounds.