STATE of Wisconsin, Plaintiff-Respondent-Petitioner,†

v.

Jaime MONJE, Defendant-Appellant.

Supreme Court

*No. 81–300. Argued September 8, 1982.—*
*Decided November 2, 1982.*

(Also reported in 325 N.W.2d 695.)

† Motion for reconsideration denied, without costs, on December 16, 1982.

For the plaintiff-petitioner the cause was argued by *Sally Wellman,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Jack E. Schairer,* assistant state public defender.

DAY, J. This is a review of a decision of the court of appeals, published at 105 Wis. 2d 66, 312 N.W.2d 827 (Ct. App. 1981), reversing an order of the Circuit Court for Rock County, Hon. Edwin C. Dahlberg, Judge, denying defendant, Jaime Monje's (hereinafter Monje), post-conviction motion to set aside his conviction for robbery,[1] on the ground the trial court lacked personal jurisdiction because of the illegality of his arrest, *i.e.,* he was arrested in South Beloit, Illinois, by a Beloit, Wisconsin, police officer on a Wisconsin warrant.

The principal issue raised on this review is: Does an illegal arrest made pursuant to a warrant issued for probable cause by a neutral and detached magistrate deprive a trial court of personal jurisdiction over the defendant?

[1] 943.32, 1979–80. "**Robbery.** (1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class C felony:

"(a) By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property; . . ."

We conclude it does not. Accordingly we reverse the court of appeals.

Other issues not decided by the court of appeals including a procedural question that the parties were asked to address by this court will be discussed in the balance of this opinion.

Early on the morning of April 26, 1979, the victim of this crime, Louis Poliere (hereinafter Poliere) was attacked on a Beloit street as he carried a bag of groceries from his car to his apartment. He claimed to have initially been struck from behind on the head with a rock. During the struggle which ensued, Poliere received numerous wounds to his head and face. The victim claimed his assailant had a knife. Approximately one hundred stitches were required to close all the wounds. Poliere claimed the attacker threatened to kill him unless he turned over his money. The attacker took a turquoise ring, a watch and an undetermined amount of cash from Poliere.

Following the attack, Poliere was interviewed by Detective Keith Hein of the Beloit Police Department and described his assailant. Another witness to the attack also described the assailant to police. Both descriptions fit that of the defendant. During the course of Detective Hein's investigation, he received a call from the South Beloit Police Department that an Elaine Van Sickle of South Beloit had some information on Poliere's assault.

Ms. Van Sickle informed Detective Hein that Monje came to her apartment in South Beloit early on the morning of April 26, 1979. At trial she testified that when he arrived his face was dirty and his trousers were covered with blood and mud. She also said he had a turquoise ring, an expensive watch, and approximately fifty-six dollars in cash.

On the basis of this information, Detective Hein requested a warrant for Monje's arrest. A warrant for the defendant's arrest on charges of robbery and attempted

first-degree murder was issued by a Rock county judge on May 4, 1979.

Following the issuance of the warrant, Detective Hein proceeded to South Beloit to look for Monje at a couple of addresses Monje had given police in the course of previous investigations. He obtained the assistance of a South Beloit police officer. While riding in a South Beloit police car, Hein observed Monje talking to several people in a parking lot. Hein got out of the car and approached Monje. He asked Monje to come with him to the South Beloit police station. The arrest warrant was executed either in the parking lot or at the police station. Hein made the arrest. For purposes of this review, we assume the defendant's arrest in Illinois was illegal.

Following the arrest, Monje was read his *Miranda*[2] rights in English and Spanish and was also advised of his extradition rights. Monje signed a form waiving extradition before Detective Hein but later claimed that he did not understand the waiver.[3] In the trial court and court of appeals, Monje claimed his rights under the Uniform Extradition Act were violated when he was returned to Wisconsin.

The defendant, Monje, was brought back to Beloit. Prior to the preliminary examination, a special appearance was entered on defendant's behalf and a motion to dismiss was made on the ground that the court lacked personal jurisdiction over the defendant because he had been illegally arrested. The motion was denied. Defendant renewed his motion at the conclusion of the preliminary hearing. The motion was denied and he was bound over for trial. He was charged with attempted first-degree murder and armed robbery. He raised the juris-

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] The trial court in its memorandum decision stated that "the record would compel a finding that the defendant signed a voluntary waiver agreeing to return to this state for trial."

dictional issue again by a petition for a writ of habeas corpus. Following an evidentiary hearing, the petition was dismissed. A jury found the defendant guilty of robbery but not guilty of attempted first-degree murder. Defendant raised the jurisdictional issue again in a post-conviction motion pursuant to sec. 974.02,[4] Stats. The motion was denied. Defendant appealed from the order denying his post-conviction motion for acquittal or in the alternative for a new trial.

The first issue is, does a trial court have personal jurisdiction over a criminal defendant who is brought before the court as the result of an illegal arrest made pursuant to a warrant based on probable cause and issued by an impartial judge.

As a preliminary matter, this court must consider whether there are any constitutional impediments to the state proceeding with a trial following Monje's illegal arrest and removal to Wisconsin. Defendant claimed at the trial court and court of appeals levels that the violation of his due process rights under the Uniform Criminal Extradition Act was sufficient to require that the complaint against him be dismissed. However, this court has recognized that there is nothing in the constitution which prohibits a person from being tried even though the extradition process is totally ignored in removing him from an asylum state. *State ex rel. Niederer v. Cady,* 72 Wis. 2d 311, 316, 240 N.W.2d 626 (1976). The right

---

[4] "974.02. **Appeals and post-conviction relief in criminal, juvenile, civil commitment and protective placement cases.** (1) An appeal to the court of appeals by the defendant in a criminal case or a defendant, juvenile or subject individual under chs. 48, 51 and 55 or a motion for post-conviction relief in a felony case must be taken in the time and manner provided in ss. 809.30 and 809.40. An appeal of an order or judgment on habeas corpus remanding to custody a prisoner committed for trial under s. 970.03 must be taken under ss. 808.03(2) and 809.30, with notice to the attorney general and the district attorney and opportunity for them to be heard."

protected by the Uniform Criminal Extradition Act is that of ". . . a sovereign state to protect its citizens from an unreasonable or unjustified removal to another state." 72 Wis. 2d at 323. Thus, even if we assume that Monje did not voluntarily waive his right to extradition, his involuntary removal would not present a constitutional bar to his being tried.

In considering the constitutional implication of an illegal arrest upon a subsequent trial, the United States Supreme Court in *Frisbie v. Collins*, 342 U.S. 519, reh. denied, 343 U.S. 937 (1952), stated that "the power of a court to try a person for a crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction,'" and went on to hold that "[t]here is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." 342 U.S. at 522. *Frisbie* involved the forcible seizure of a criminal defendant in Chicago by police officers who transported him to Michigan where he was tried and convicted of murder. In the instant case, assuming that the arrest in South Beloit was illegal, the Wisconsin court was not thereby deprived of jurisdiction on any constitutional ground. The supreme court's holding in *Frisbie* has been reiterated in several recent cases.[5]

In *Walberg v. State*, 73 Wis. 2d 448, 243 N.W.2d 190 (1976), this court noted that "due process is satisfied following an illegal arrest when the accused is bound over following a preliminary hearing involving a finding of probable cause, has been arraigned by the circuit court, and has received a fair trial." 73 Wis. 2d at 459. These requirements have been met. As both the United States Supreme Court and this court have held, there is

---

[5] *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975); *United States v. Crews*, 445 U.S. 463, 474 (1980).

nothing in the United States Constitution which would require that Monje's conviction be set aside or that he be given a new trial because of the illegality of his arrest.

Although no constitutional violation has occurred, there remains the question of whether, under Wisconsin law, the trial court may exercise personal jurisdiction over a defendant brought before it by an illegal arrest. In *Walberg,* the court repeated its longstanding rule[6] that personal jurisdiction is dependent upon the defendant's physical presence before the court pursuant to a "properly issued warrant, a lawful arrest or a voluntary appearance." 73 Wis. 2d at 458. In the instant case, the defendant does not claim the arrest warrant was issued without probable cause or by other than a neutral and detached magistrate. Defendant's only claim is that, by virtue of his unlawful arrest, the trial court lacks personal jurisdiction over him. For the reasons set forth below, we hold that where an arrest warrant is issued on probable cause by a neutral and detached magistrate, the fact that the defendant is brought before the trial court as a result of an unlawful arrest does not deprive the trial court of personal jurisdiction.

In *Walberg,* the court stated that ". . . personal jurisdiction is dependent upon the defendant's physical presence before the court pursuant to a *properly issued warrant, a lawful arrest or a voluntary appearance."* 73 Wis. at 458. (Emphasis added.)

The defendant would have us interpret the above as though it read ". . . a properly issued warrant *and* a lawful arrest or a voluntary appearance."

---

[6] *Pillsbury v. State,* 31 Wis. 2d 87, 142 N.W.2d 187 (1966); *Lampkins v. State,* 51 Wis. 2d 564, 187 N.W.2d 164 (1971); *State ex rel. La Follette v. Raskin,* 30 Wis. 2d 39, 139 N.W.2d 667 (1966).

However, it is more properly interpreted to read ". . . a properly issued warrant *or* a lawful arrest or a voluntary appearance." To read it otherwise would make the statement incorrect since it purports to state all of the ways whereby a court acquires personal jurisdiction over a criminal defendant, and a "lawful arrest" *without a warrant* is obviously one of the ways by which such person jurisdiction is obtained.

In the case before us "a properly issued warrant" had been secured and was the basis for Detective Hein seeking out the defendant to apprehend him. Such a properly issued warrant was outstanding in the jurisdiction where issued at the time of the defendant's return to Wisconsin.

Wisconsin cases have held that an unlawful arrest resulting from a defect in the arrest warrant will, absent waiver of the defect by the defendant, divest the trial court of personal jurisdiction over the defendant.[7] In *Walberg,* the defendant claimed that the trial court lacked personal jurisdiction over him because his arrest warrant was not issued by a neutral and detached magistrate. This court agreed that an improper arrest warrant and an illegal arrest resulting therefrom could deprive the trial court of personal jurisdiction over the defendant. However, the court also found that no timely objection had been made and thus the defendant waived his right to challenge the court's jurisdiction. *Walberg,* 73 Wis. 2d at 462.

In *Walberg,* the court noted that the purpose underlying this rule is ". . . [t]o assure that arrest warrants will be issued only on probable cause as determined by a neutral magistrate." *Walberg,* 73 Wis. 2d at 459; *citing Raskin,* 30 Wis. 2d at 47.

---

[7] *State ex rel. La Follette v. Raskin,* 30 Wis. 2d 39, 139 N.W.2d 667 (1966); *State ex rel. White v. Simpson,* 28 Wis. 2d 590, 137 N.W.2d 391 (1965).

The court of appeals in its opinion in this case[8] reads the *Walberg* rule as a kind of exclusionary rule designed to improve police practices by deterring "unauthorized arrests." 105 Wis. 2d at 75. *Walberg,* however, does not stand for that proposition. It did not involve a question of police practices. Rather the issue was whether an incorrectly issued arrest warrant would deprive the trial court of personal jurisdiction. 73 Wis. 2d at 451. In *Raskin,* the case which the court of appeals cites for the proposition that the *Walberg* rule is designed to improve police practices, the question was whether a police officer's statement in a complaint based upon information and belief was sufficient to establish probable cause for an arrest warrant. Here again, the focus of the court was on the validity of the arrest warrant.

In the present case, the concern that the arrest warrant be validly issued is met. Here the defendant received the protections arising from an arrest warrant issued for probable cause by a neutral and detached magistrate. He has not challenged the validity of the arrest warrant. Thus, the holding in *Walberg* is not applicable to the facts of this case. The fact that the defendant's arrest was unlawful, standing alone, is not sufficient to divest the trial court of personal jurisdiction.

In cases where the court has examined the question of whether an illegal arrest made pursuant to a validly issued arrest warrant would deprive a trial court of personal jurisdiction over the defendant, the court has held that it would not. In *State v. Monsoor,* 56 Wis. 2d 689, 203 N.W.2d 20 (1973), the court held that the illegal execution of a valid arrest warrant did not deprive the trial court of personal jurisdiction over the defendant. 56 Wis. 2d at 694. In so holding, the court noted

---

[8] *State v. Monje,* 105 Wis. 2d 66, 312 N.W.2d 827 (Ct. App. 1981).

it was concurring with the majority of jurisdictions that have examined this question. *Id.* at 694. The court further stressed that it had, as far back as *Baker v. State,* 88 Wis. 140, 59 N.W. 570 (1894), ". . . [r]efused to hold an illegal execution of a valid arrest warrant sufficient to result in a loss of personal jurisdiction over the accused." *Monsoor,* 56 Wis. 2d at 694.

In *Laasch v. State,* 84 Wis. 2d 587, 267 N.W.2d 278 (1978), cited by the defendant, this court held that the warrantless arrest of a person in her own home, even though based on probable cause but absent exigent circumstances, was unlawful and would deprive the trial court of personal jurisdiction over the defendant. 84 Wis. 2d at 596–597. In order to protect the "special dignity and sanctity" that one's home is entitled to, such a ruling was justified. However, those values are not implicated here.

Thus, while *Laasch* has continued validity in divesting trial court of personal jurisdiction over a defendant arrested in his own home without an arrest warrant and absent exigent circumstances, it does not apply to this case.

We hold that an illegal arrest, standing alone, pursuant to a valid arrest warrant, is not sufficient to invalidate a subsequent lawful criminal conviction. The remedy must be tailored to the injury. Here, defendant has had all of the protections which accompany a lawful criminal conviction. To require that a defendant be discharged, re-arrested and given a new trial where the outcome of the first trial was not affected by the illegal arrest is to place a burden on society and the courts that is greatly disproportionate to any "wrong" that has been done the defendant.

We therefore reverse the court of appeals on this issue.

The second issue is whether the trial court erred in refusing to hold a suppression hearing during the trial, outside the presence of the jury, before admitting the defendant's statements into evidence, where the voluntariness of the statements was not challenged at trial. This issue was not addressed by the court of appeals because of its holding that the defendant's illegal arrest divested the trial court of personal jurisdiction.

During the course of the trial, defense counsel made objections to testimony by Hein before the jury that the defendant had been advised of his *Miranda* rights. The objections and motions for mistrials appear from the record to have been based on the ground that the jury should not have been informed that the defendant was advised of his *Miranda* rights. Defense counsel never challenged the voluntariness of any of Monje's statements made to the police regarding having been read his *Miranda* rights or having admitted the taking of the victim's money, watch and ring.

Defense counsel ultimately requested that a *Miranda-Goodchild* hearing[9] be held on the admissibility of the defendant's statements. However, even when the request was made, counsel did not base his request on a claim that the defendant's statement was made involuntarily or in violation of the defendant's rights. The trial court determined that since statements of the defendant had already been admitted without a request by defense counsel for a *Miranda-Goodchild* hearing, the request came too late. The trial court, therefore denied the defendant's motion.

Defendant argues that sec. 971.31(3),[10] Stats. 1979–80, requires a trial court to hold a hearing outside of

[9] *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

[10] "971.31. **Motions before trial.** . . . (3) The admissibility of any statement of the defendant shall be determined at the trial

the presence of the jury when the defendant challenges the admissibility of a statement made by the defendant. According to the defendant, this court in *Upchurch v. State,* 64 Wis. 2d 553, 219 N.W.2d 363 (1974), interpreted this section as mandatorily requiring a hearing unless the defendant challenged the admissibility of the statement before trial. *Upchurch,* 64 Wis. 2d at 557. This is correct as far as it goes. However, as this court has stated, at a *Goodchild* hearing the sole issue to be decided is the voluntariness of the statements.[11] Thus, unless the defendant challenges the voluntariness of statements he made or that he was not advised of his *Miranda* rights, the trial court is under no obligation to hold an evidentiary hearing outside of the presence of the jury.[12]

Here the defendant has not challenged the voluntariness of the statements nor claimed that he was not advised of his rights. The defendant argues that he objected to the admission of certain statements at trial but admits his objections were never particularized. Generalized objections without reference to the voluntariness of the challenged statements are not sufficient to require a *Miranda-Goodchild* hearing.[13] The defendant argues that defense counsel moved *in limine* prior to trial to keep out the defendant's statements. A review of the record shows that the motion was based on the alleged

by the court in an evidentiary hearing out of the presence of the jury, unless the defendant, by motion, challenges the admissibility of such statement before trial."

[11] *Norwood v. State,* 74 Wis. 2d 343, 362, 246 N.W.2d 801 (1976); *State v. Benoit,* 83 Wis. 2d 389, 403, 265 N.W.2d 298 (1978).

[12] In *Upchurch,* the case relied on by the defendant, the defendant's counsel made a motion to determine the voluntariness of the statement given by the defendant. 64 Wis. 2d at 559.

[13] *See Pickens v. State,* 96 Wis. 2d 549, 575–76, 292 N.W.2d 601 (1980); *Huebner v. State,* 33 Wis. 2d 505, 519, 147 N.W.2d 646 (1967).

failure of the state to comply with a discovery request. Thus, throughout the course of the trial the defense counsel never challenged the voluntariness of the defendant's oral statements. We conclude that under the facts as presented, the trial court did not err in refusing to hold a *Miranda-Goodchild* hearing.

The final issue to be considered is whether an appeal from a post-conviction motion pursuant to Rule 809.30, Stats.,[14] is subject to the rule governing civil appeals that an order denying a motion after judgment is not appealable unless it decides an issue which could not be raised by appeal from the judgment. This is a procedural question the parties were asked to address by this court. The issue arises because, once an appeal is made pursuant to sec. 809.30(1)(h), Stats., sec. 809.-30(1)(i), provides that "subsequent proceedings in the appeal are governed by the procedures for civil appeals."

The rule governing civil appeals is set out in *Marsh v. Milwaukee,* 104 Wis. 2d 44, 310 N.W.2d 615 (1981). In *Marsh,* the appellant was appealing from an order by the circuit court which denied a motion for reconsideration of the court's judgment denying the appellant a temporary restraining order. The court held in *Marsh* that an appeal from an order denying a post-judgment motion may not be taken unless an issue is raised which is not decided by the judgment. 104 Wis. 2d at 49.

---

[14] Applicable provisions of sec. 809.30, Stats., include:

"809.30 **Rule (Appeals in felony cases).** (1) APPEAL OR POST-CONVICTION MOTION BY DEFENDANT. . . . (f) The defendant shall file a notice of appeal or motion seeking postconviction relief within 30 days of the service of the transcript. . . .

"(h) The defendant shall file an appeal from the judgment of conviction and sentence and, if necessary, from the order of the trial court on the motion for postconviction relief within 20 days of the entry of the order on the postconviction motion. . . .

"(i) Subsequent proceedings in the appeal are governed by the procedures for civil appeals."

In the context of a motion for reconsideration, this rule is reasonable. In *Marsh,* the appellant at best was attempting to relitigate her case through the use of motions for reconsideration. After failing twice to get the trial court to reconsider her case, she attempted an appeal. However, the appeal raised no issues that could not have been raised by appealing the judgment. Since the time for appealing the judgment had passed, the appellant was not allowed to use an appeal from the motion for reconsideration to extend that time.

Where an appeal arises from a post-conviction motion for a new trial, the rule set out in *Marsh* is counterproductive however. In both civil[15] and criminal[16] cases, this court has held that motions for new trials must present the trial court with alleged trial errors in order for those errors to be considered as a matter of right on appeal. This court has adopted a policy of encouraging the trial court to correct errors before appeal is taken. If we were to apply the *Marsh* Rule to motions for new trials following conviction, appellants would not be allowed to appeal the denial of such motions because the appeal would raise issues that could have been raised by appeal of the judgment. Yet, for alleged trial errors to be appealable as a matter of right, such motions must be made. We would thus end up with a situation where attorneys would be forced to appeal the judgment while simultaneously moving for a new trial based upon alleged trial errors. Thus, instead of aiding the appellate process, applying the *Marsh* Rule to motions for new trials would only hinder it. We therefore hold the *Marsh*

[15] *See Wells v. Dairyland Mut. Ins. Co.,* 274 Wis. 505, 515–516, 80 N.W.2d 380 (1957); *Behning v. Star Fireworks Mfg. Co.,* 57 Wis. 183, 187, 203 N.W.2d 655 (1973).

[16] *See Sanford v. State,* 76 Wis. 2d 72, 83–84, 250 N.W.2d 348 (1977), *Thiesen v. State,* 86 Wis. 2d 562, 564, 273 N.W.2d 314 (1979).

Rule not applicable to post-conviction motions for new trials. In this case, the denial of defendant's post-conviction motion for acquittal, or in the alternative for a new trial, was appealable.

We hold that the trial court properly exercised personal jurisdiction over the defendant and that the court properly refused to hold a suppression hearing with regard to the admission of defendant's statements. We further hold that the rule governing civil appeals as set out in *Marsh* is not applicable to post-conviction motions for a new trial.

*By the Court.*—The decision of the court of appeals is reversed.

BEILFUSS, C.J., took no part.

SHIRLEY S. ABRAHAMSON, J. *(concurring in part and dissenting in part).* I concur with the majority's holdings that the trial court did not err in refusing to hold a *Miranda/Goodchild* hearing in this case and that the rule governing civil appeals as set out in *Marsh v. Milwaukee,* 104 Wis. 2d 44, 310 N.W.2d 615 (1981), does not govern criminal appeals. I dissent from the majority's holding that the cases in which an illegal arrest will deprive the trial court of personal jurisdiction over a criminal defendant are only those cases in which the arrest's illegality resulted from a defect in the warrant.

This holding unnecessarily complicates the law in Wisconsin and undermines the basis of the rule followed in *Walberg v. State,* 73 Wis. 2d 448, 243 N.W.2d 190 (1976). Like the United States Supreme Court[1] and

[1] The federal rule is derived from a case where the police kidnapped the defendant in Peru and took him to Illinois to stand trial. The supreme court held that this kidnapping did not constitute grounds for depriving the trial court of personal jurisdic-

unlike the majority here, I find no meaningful way to distinguish cases involving illegal arrests on the basis of the underlying causes of the illegality. In making the underlying cause of the illegality the distinguishing feature in this case, the majority injects uncertainty into what was previously a clear rule in Wisconsin. Since the majority gives no practical or theoretical reasons to distinguish between practices that taint arrests and practices that do not, I would either affirm the decision of the court of appeals which relies on *Walberg,* or I would, as the state has urged us to do on numerous occasions,[2] reverse *Walberg* and adopt the rule followed in the majority of the states and the federal courts.

The following memorandum was filed on December 16, 1982.

PER CURIAM *(on motion for reconsideration).* In his motion for reconsideration the defendant argues that Rule 809.30(1)(f) has eliminated the necessity for post-conviction motions. The Rule reads: "The defendant shall file a notice of appeal *or* motion seeking postconviction relief within 30 days of the service of transcript." (Emphasis added.) The defendant reads the "or" as making postconviction motions optional. As authority he refers us to the Judicial Council Committee Note to Rule 809.30. That note reads in part:

tion over the defendant. Rather than confining the holding to the facts of the case, the court stated that "mere irregularities in the manner in which [the defendant] may be brought into the custody of the law" would not defeat personal jurisdiction. *Ker v. Illinois,* 119 U.S. 436, 440 (1886). The Supreme Court followed *Ker v. Illinois,* in *Frisbie v. Collins,* 342 U.S. 519, 522 (1952) (illegal extradition), and in *Gerstein v. Pugh,* 420 U.S. 103, 118–19 (1975) (illegality in the arrest arising from Florida's defective procedure for obtaining arrest warrants).

[2] *See State v. Cheers,* 102 Wis. 2d 367, 417, 306 N.W.2d 676 (1981) (Abrahamson, J., dissenting).

". . . Under the former procedure counsel, . . . was required to . . . present to the trial court by a post-trial motion any issues which the defendant desired to raise on appeal even if the issues had been presented to and decided by the court during the trial. . . .

"The procedures in this section are designed to . . . eliminat[e] the necessity of each issue being presented twice to the trial court."

The Judicial Council is an advisory body (sec. 758.13 (2) (a), Stats. 1979–80) and its interpretations are not binding. It is only under sec. 974.02 (2), Stats. 1979–80[1] that authorization is given to take an appeal without a postconviction motion first being made. It is this section to which the "or" in sec. 809.30 (1) (f) refers. We construe this rule as being consistent with prior case law and hold that for issues on appeal to be considered as a matter of right, postconviction motions must be made except in challenges to the sufficiency of the evidence under sec. 974.02 (2).

This clarification shall be enforced as to all judgments entered on and after March 1, 1983.

Motion for reconsideration is denied without costs.

[1] Sec. 974.02 (2) reads: "A motion challenging the sufficiency of the evidence is not necessary to raise on appeal the sufficiency of the evidence."