STATE of Wisconsin, Plaintiff-Appellant,

v.

Donald James SLAWEK, Defendant-Respondent.
[Case No. 82–1579–CR.]

STATE of Wisconsin, Plaintiff-Appellant,

v.

Jim (NMI) SLAWEK, Defendant-Respondent.†
[Case No. 83–1580–CR.]

Court of Appeals

*Nos. 82–1579–CR, 83–1580–CR. Submitted on briefs June 1, 1983.*
*—Decided July 26, 1983.*
(Also reported in 338 N.W.2d 120.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *James H. McDermott,* assistant attorney general.

For the defendant-respondent Donald James Slawek the cause was submitted on the briefs of *Michael J. Rynes* of Madison.

For the defendant-respondent Jim (NMI) Slawek the cause was submitted on the briefs of *John C. Albert* and *Smoler, Albert & Rostad* of Madison.

Before Gartzke, P.J., Dykman, J. and W.L. Jackman, Reserve Judge.

DYKMAN, J. The state appeals from the trial court's orders dismissing the complaint against defendants for burglary contrary to sec. 943.10(1)(a), Stats. The state argues that the trial court erred by dismissing the complaint after concluding that it lacked jurisdiction because the Chicago police officers who arrested defendants did not have authority to do so in Wisconsin. We reverse because we conclude the officers made valid citizen's arrests.

On January 7, 1982, six on-duty Chicago police officers in five unmarked police cars began following defendants' van in Chicago on information that defendants were engaged in residential burglaries. The caravan traveled into Wisconsin, where none of the officers were deputized.

The officers followed defendants to a residential section of Lake Windsor, Wisconsin where they drove through the area for about one half-hour. At 5:00 p.m., some of the officers watched one of defendants enter a private residence. Defendant remained out of sight for half an hour and then exited the house carrying a brown shoulder bag which was not with him when he entered the residence. He walked down the street until the van picked him up.

Less than one mile later, the officers stopped the van. Defendants were frisked, handcuffed and placed in the back seat of one of the police cars. Local authorities were notified. One Chicago police officer had attempted to contact local authorities at about 5:00 p.m. but was unable to stop a local police officer in the area and became stuck in a snow-filled ditch while trying to go to police headquarters. The officers had constant radio contact between themselves but were unable to contact local authorities by radio.

The trial court dismissed the complaint against defendants after concluding that the Chicago officers were not empowered to act as law enforcement officers in Wisconsin and were not acting as private citizens which woud have enabled them to make citizens' arrests. It determined that the officers were on duty and probably functioning pursuant to departmental policy and approval. The court reasoned that one of the principles underlying the permissibility of a citizen's arrest is the unavailability or impracticality of reaching police officers to accomplish the arrest. The court noted the

officers' use of handcuffs, weapons and ordinary police procedures in effectuating the arrest. For policy reasons, it refused to condone the actions of the Chicago police officers beyond their jurisdiction and their disregard of local police authorities.

Whether a police officer can make a citizen's arrest when he or she observes a felony outside his or her official jurisdiction is a question of law. "When the trial court rules on a question of law, our review is independent and we are not bound by the trial court's decision." *Johnson v. K-Mart Enterprises, Inc.*, 98 Wis. 2d 533, 539, 297 N.W.2d 74, 77 (Ct. App. 1980).

As a general rule, a police officer acting outside his or her jurisdiction does not act in his or her official capacity and does not have any official power to arrest. *State v. Hodgson*, 200 A.2d 567, 569 (Del. 1964) ; *State v. Phoenix*, 428 So. 2d 262, 265 (Fla. App. 1982) ; *Stevenson v. State*, 413 A.2d 1340, 1343 (Md. App. 1980) ; *Commonwealth v. Harris*, 415 N.E.2d 216, 219 (Mass. App. 1981) ; *Nash v. State*, 207 So. 2d 104, 106 (Miss 1968) ; *Meadows v. State*, 655 P.2d 556, 557 (Okla. Crim. App. 1982) ; and *State v. MacDonald*, 260 N.W.2d 626, 627 (S.D. 1977). A police officer may, however, make a lawful arrest even when he or she is acting beyond his or her official capacity. *State v. Barrett*, 96 Wis. 2d 174, 181, 291 N.W.2d 498, 501 (1980). In *Barrett*, the court cited *Radloff v. National Food Stores*, 20 Wis. 2d 224, 237(a)–(b), 121 N.W.2d 865, 123 N.W.2d 570, 571 (1963) (on reconsideration), for the proposition that an off-duty officer in another county can made a lawful arrest when he or she witnesses a crime. *Id*. The court has also determined that a citizen who witnesses a homicide can lawfully arrest the perpetrator without a warrant. *Keenan v. State*, 8 Wis. 26 [*132], 29 [*136] (1858).

Except for the statements contained in *Barrett* and *Radloff, supra,* no Wisconsin cases have expressly reached the issue of whether a police officer can lawfully make a citizen's arrest for a felony committed in his or her presence while outside his or her official jurisdiction. An extensive line of cases from other states, however, upholds the validity of an extraterritorial arrest made by a police officer who lacked the official authority to arrest when the place of arrest authorizes a private person to make a citizen's arrest under the same circumstances. *Hodgson,* 200 A.2d at 569; *Phoenix,* 428 So. 2d at 265; *McAnnis v. State,* 386 So. 2d 1230, 1232 (Fla. App. 1980) ; *State v. Shipman,* 370 So. 2d 1195, 1196 (Fla. App. 1979) ; *Sturman v. City of Golden Beach,* 355 So. 2d 453, 455–56 (Fla. App. 1978) ; *State v. Crum,* 323 So. 2d 673, 673 (Fla. App. 1975) ; *Marden v. State,* 203 So. 2d 638, 640 (Fla. App. 1967) ; *Collins v. State,* 143 So. 2d 700, 703 (Fla. App. 1962) ; *State v. O'Kelly,* 211 N.W.2d 589, 595 (Iowa 1973) ; *State v. Jones,* 267 So. 2d 559, 563 (La. 1972) ; *Stevenson,* 413 A.2d at 1344, and cases cited therein; *Commonwealth v. Gullick,* 435 N.E.2d 348, 351 (Mass. 1982), and cases cited therein; *Harris,* 415 N.E.2d at 220, and cases cited therein; *State, Dept. of Public Safety v. Juncewski,* 308 N.W.2d 316, 321 (Minn. 1981) ; *State v. Filipi,* 297 N.W. 2d 275, 278 (Minn. 1980) ; *Brown v. State,* 217 So. 2d 521, 524 (Miss 1969) ; *Nash,* 207 So. 2d at 106–07; *Meadows,* 655 P.2d at 557; and *MacDonald,* 260 N.W.2d at 627.[1]

---

[1] Defendants attempt to distinguish several of the cases cited above because they concern citizen's arrests by officers in adjoining jurisdictions in the same state. They argue that because the officers here were from a different state, these cases are inapplicable. We disagree and conclude that the reasoning which permits an officer to make a citizen's arrest in an adjoining jurisdiction within the same state also allows an officer from a different state

The trial court found our reasoning in *State v. Monje,* 105 Wis. 2d 66, 70, 312 N.W.2d 827, 829 (Ct. App. 1981) persuasive and relied upon it when concluding that the complaint must be dismissed. Our decision, however, was reversed by the supreme court in *State v. Monje,* 109 Wis. 2d 138, 325 N.W.2d 695 (1982), after the trial court entered its order of dismissal.

■

The trial court expressed its concern that this type of action by out-of-state police officers should not be condoned. While we share the trial court's indignation, we do not conclude that the police officer's lack of official capacity invalidates defendants' arrests. The officers observed defendants robbing the house in Windsor. According to *Keenan, supra,* and *Radloff, supra,* private citizens under the same circumstances could have made the arrest. It would be anomalous to hold unlawful an

to make a citizen's arrest in a neighboring state under those circumstances when that state allows private persons to make arrests.

Defendants also argue that we should adopt the "under color of office" doctrine found in the Florida cases cited above. They contend that these cases invalidate citizen's arrests by officers when they are acting "under color of office", *e.g.,* within their official capacity as police officers. However, *State v. Phoenix,* 428 So.2d 262 (Fla. App. 1982), the most recent of the Florida cases, states that the "under color of office" doctrine means that officers acting outside their jurisdiction but not in fresh pursuit may not utilize the power of their office to gather evidence or ferret out criminal activity not otherwise observable. *Id.* at 266. The court concluded that the "under color of office" doctrine does not require officers to discard the indicia of their position when making an arrest or invalidate those arrests made when the officers happen to be in uniform. *Id.* We note that the Chicago officers did not "ferret out" criminal activity but rather simply observed defendants robbing a residence. We conclude, without adopting the Florida "under color of office" doctrine, that the fact that the officers in this case used weapons, handcuffs and ordinary police procedures in arresting defendants does not invalidate the arrests.

arrest by police officers when the same arrest by private citizens would have been lawful. As the court in *O'Kelly,* 211 N.W.2d at 595, stated, "[w]hen the . . . officers came to [the adjoining jurisdiction], they ceased to be officers but they did not cease to be persons." The Chicago officers were private citizens entitled to arrest defendants when they observed them commit a burglary in their presence. The trial court erred by dismissing the complaint.

*By the Court.*—Orders reversed and cause remanded for further proceedings.