[Crim. No. 8788.   Second Dist., Div. Four.   Feb. 21, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. FRED RAMBERT MARTIN, Defendant and Appellant.

Dahlstrum & Walton and Richard A. Walton for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David M. Rothman, Deputy Attorney General, for Plaintiff and Respondent.

BURKE, P. J.—Defendant was charged with and convicted of possession of narcotics, having been previously convicted twice for the same offense. A motion for a new trial and probation were denied and defendant appeals from the judgment.

Three Los Angeles city policemen, attached to the narcotics detail, allegedly received information about 7 p.m. on April 8, 1962, concerning defendant who was not a resident of the City of Los Angeles but lived in the City of Alhambra in Los Angeles County. They had previously learned that defendant had suffered convictions for possession and use of narcotics. They went to defendant's hotel about 9 p.m. and awaited his appearance which occurred at approximately 10:30 p.m. He was unknown to the officers except through photographs they had seen in the police files. Defendant was approached in the hallway of the hotel, the officers approaching him from both directions, the hallway being otherwise closed off. Officer Wesley identified himself as a police officer, and Officer Pace

immediately asked defendant how his "marks" looked, referring to "scab" and "injection" marks, to which defendant replied "pretty bad." Officer Pace asked defendant to remove his jacket, which he did, and the officer examined defendant's left arm with a flashlight, observing some marks which he considered to have been caused by an injection needle. Thereupon defendant was arrested, specifically for use of narcotics under section 11721 of the Health and Safety Code, which section was later declared unconstitutional[1] insofar as it applied to narcotic addiction.

Defendant was then asked whether he was in possession of any narcotics and he stated that he was not. He was asked if he would mind if his room were searched and defendant said, "I have just about had it, come on and I will show you where it is." Defendant produced his key for the officers with which Officer Wesley opened the door to defendant's room, and defendant directed the officers to a nightstand in which a quantity of powdery substance, later analyzed and proved to contain heroin, was found, plus an empty condom and a razor blade.

Defendant contends:

(1) The police officers of the City of Los Angeles had no authority, as officers, to arrest defendant in the City of Alhambra for an offense purportedly committed in that city;

(2) Such arrest could not have been made, legally, by such officers as private citizens;

(3) The court erred in receiving evidence obtained in a search incident to an illegal arrest; and

(4) The court erred in holding the purported consent to search to be free and voluntary.

Defendant's contentions must be sustained.

As a general principle, well established in most jurisdictions, though not specifically held in any controlling decisions in California, a public officer for a particular county or municipality has no official power to arrest offenders beyond the boundaries of the county or district for which he is appointed. (*Brittain* v. *United States Fidelity & Guaranty Co.*, 219 Ky. 465 [293 S.W. 956].)[2]   Apparently conceding this position, respondent nevertheless contends the arrest in the instant case to have been proper, as there is unanimous authority supporting the action of the officers as a

[1]*Robinson* v. *State of California,* 370 U.S. 660 [82 S.Ct. 1417, 8 L.Ed. 2d 758].

[2]This statement excludes so-called "fresh pursuit" cases.

citizen's arrest, relying upon Penal Code section 837, which provides:

"A private person may arrest another:

"1. For a public offense committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it."

Officer Wesley testified that the arrest was made under Health and Safety Code section 11721 which, at the time of defendant's arrest, classified use of and addiction to narcotics as misdemeanors. The officers knew they were beyond the city limits of Los Angeles; they were not working in cooperation with officers from any other jurisdiction, federal, state or local; and they had not contacted the Alhambra Police Department prior to the arrest.

An officer's power of arrest, when acting beyond the limits of the geographical unit by which he is appointed, becomes that which is conferred upon a private citizen in the same circumstances. (*People* v. *Alvarado*, 208 Cal.App.2d 629 [25 Cal.Rptr. 437]; *People* v. *Ball*, 162 Cal.App.2d 465 [328 P.2d 276].) Accordingly, in the instant case, since we must view the arrest to have been made by private citizens, and since no felony was involved at the time of the arrest, the only justification for such arrest could have been the commission by defendant of a public offense in their presence. The record does not disclose the commission of any offense whatever in the presence of such officers. Acting as private citizens, the officers had no right to require defendant to submit to an examination. A private citizen, unlike a peace officer, may not arrest whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence, or whenever he has reasonable cause to believe that such person has committed a felony, whether or not a felony has in fact been committed. (Pen. Code, §§ 836, 837.) A citizen's arrest may not be made for a misdemeanor offense neither committed nor attempted in the citizen's presence. It is apparent, therefore, that the citizen's arrest of defendant was illegal. The arrest being illegal, the subsequent search was also illegal and the evidence seized in the search should have been suppressed. While the search of a person being arrested by a citizen is authorized by section 846 of the Penal

Code in the removal of all offensive weapons from the person of the one arrested, no express authority exists for a citizen to conduct a search of an arrested person's dwelling as an incident to an arrest. The duty of the citizen upon making a lawful arrest is to take the arrested person to the nearest or most accessible magistrate in the county in which the arrest is made and to make a complaint stating the charge against the person arrested (Pen. Code, § 849) or, as an alternative, to deliver the arrested person to a police officer (Pen. Code, § 847).

Such being the case, we deem respondent's contentions that the search of defendant's rooms was consented to, through which evidence for conviction was obtained, must be rejected upon the authority that consent given in submission to an express or implied assertion of authority cannot be said to be free and voluntary. (*People* v. *Michael*, 45 Cal.2d 751 [290 P.2d 852].) Accordingly, both the purported consent of defendant for search, and the fruits of that search, must be deemed to have been inadmissible as evidence against defendant. (*People* v. *Valenti*, 49 Cal.2d 199 [316 P.2d 633]; *People* v. *Tarantino*, 45 Cal.2d 590 [290 P.2d 505].)

We are cognizant of the rule announced in *People* v. *Randazzo*, 220 Cal.App.2d 768 [34 Cal.Rptr. 65] which in turn reenunciates the holding of *Burdeau* v. *McDowell*, 256 U.S. 465 [41 S.Ct. 574, 65 L.Ed. 1048, 13 A.L.R. 1159], that evidence obtained in an unreasonable search and seizure by a private citizen is admissible. Respecting the Fourth Amendment and the constitutional proscription against unreasonable search and seizure, it is stated in *Burdeau, supra*, at page 475 [65 L.Ed. at page 1051, 13 A.L.R. 1163]: "Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; ..."

The inapplicability of the *Burdeau* rule to the instant case is made clear by the further holding of our Supreme Court in *People* v. *Tarantino, supra*, 45 Cal.2d 590, at page 595: "The engineer, however, was employed by the district attorney and the police department. He worked under the direct supervision of an inspector of police, and was paid with public funds. Accordingly, his installation of the microphone as an agent of public officials and the clandestine eavesdropping by the police violated the constitutional provisions. (*Irvine* v. *California* (1954), *supra*, 347 U.S. 128, 132 [74 S.Ct. 381, 98

L.Ed. 561, 568-569]; *Wolf* v. *Colorado* (1949), *supra,* 338 U.S. 25, 27 [69 S.Ct. 1359, 93 L.Ed. 1782, 1785].) Evidence so obtained must be excluded. (*People* v. *Cahan* (1955), *supra,* 44 Cal.2d 434, 444 [282 P.2d 905]; *People* v. *Berger* (1955), *supra,* 44 Cal.2d 459, 462 [282 P.2d 509].)''

Here, the evidence was discovered by the arresting officers themselves, albeit as private citizens. Their citizen's arrest was illegal for the reasons heretofore indicated. Their search of defendant's premises, as an incident to their illegal citizen's arrest, was also illegal. ■ ''Evidence obtained from a defendant as a 'direct result' or the 'immediate product' of an unlawful arrest is obtained in violation of the constitutional guarantee against unlawful searches and seizures. (*Badillo* v. *Superior Court,* 46 Cal.2d 269, 273 [294 P.2d 23]; *People* v. *Macias,* 180 Cal.App.2d 193, 198 [4 Cal. Rptr. 256]; *Gascon* v. *Superior Court,* 169 Cal.App.2d 356, 359 [337 P.2d 201].)'' (*People* v. *Allen,* 214 Cal.App.2d 136, 138 [29 Cal.Rptr. 455].) ■ The seizure of the evidence during that illegal search must be realistically construed, as in *Tarantino.* It was in the performance of their duties as officers and as employees and agents of the state. In fact, Officer Wesley so indicated when he identified the officers to defendant: ''... I stated, police officers.'' Accordingly, the search and seizure must be held, as in *Tarantino,* to have been within the proscriptions of both the state and federal Constitutions.

The judgment of conviction is reversed.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied March 10, 1964, and respondent's petition for a hearing by the Supreme Court was denied April 15, 1964.