STATE of South Dakota, Appellant,

v.

Russell D. MacDONALD, Respondent.

No. 12087.

Supreme Court of South Dakota.

Dec. 30, 1977.

Judith A. Atkinson, Asst. Atty. Gen., Pierre, for appellant; William J. Janklow, Atty. Gen., Pierre, on the brief.

Arlie J. Brende and Steven W. Sanford of Braithwaite & Cadwell, Sioux Falls, for respondent.

MORGAN, Justice.

This is an appeal by the state of the trial court's finding that the arrest of the defendant was invalid. The issue before this Court is whether a chief of police can make a valid arrest of a person outside his municipal jurisdiction when there is probable cause present that the person has committed a misdemeanor in violation of a state statute. The trial court found the arrest unlawful and ordered that any previous Order of Revocation be rescinded. We reverse.

On March 9, 1975, the Chief of Police of Brandon, South Dakota, received a radio call from a highway patrolman stating that he had heard a report over his CB radio that a car was in the ditch approximately two miles west of Brandon on County Road 140. Being the closest officer to the scene, the Chief investigated and found a car up-

right in the ditch with its lights on, its engine running, and the defendant, Russell MacDonald, sitting behind the wheel of the vehicle.

Based on the statements and actions by the defendant which indicated to the Chief that he was intoxicated, the defendant was placed under arrest on a charge of DWI, a violation of SDCL 32–23–1. The Chief correctly stated to the defendant his implied consent rights twice, and both times the defendant refused to take the test.

A hearing was held on May 2, 1975, which determined that the driver's license of the defendant should be revoked for failure to comply with the implied consent laws. On January 14, 1976, at a trial de novo, the circuit court found for the state and upheld the revocation. On January 16, 1976, the defendant petitioned the court for a rehearing on the grounds that the arrest was invalid. On the rehearing, the trial judge agreed.

The state has delegated part of its sovereign power to the municipalities under SDCL 9–29–1 so that municipalities may have the power to exercise jurisdiction for all authorized purposes over all territory within the corporate limits and within one mile of the corporate limits. One of the authorized purposes, as stated above, is the regulation of the police of the municipality under SDCL 9–29–2. In conjunction with SDCL 9–29–2, the chief of police shall perform such duties as shall be prescribed by the governing body for the preservation of the peace. SDCL 9–29–18. The powers of the policemen are set forth under SDCL 9–29–19 which provides the police officer the authority to execute and serve all warrants and the power to pursue and arrest any person fleeing from justice in any part of the state, and that they may arrest any

person guilty of any breach of the peace, or any violation of the laws of the state, or ordinances of the municipality.

■ In the absence of specific statutory authority, it is a well established general principle, in most jurisdictions, that a public police officer for a particular municipality has no official power to arrest offenders beyond the territorial jurisdiction of the municipality for which he serves.[1] Lacking official power however, the authorities generally hold that he does have the same power of arrest as that conferred on a private citizen.[2]

We hold, however, the chief of police made a valid arrest at the scene of the accident for an offense committed in his presence. Under the provisions of SDCL 23–22–14, et seq., a private person may arrest another for a public offense committed or attempted in his presence, and may search him for offensive weapons on his person; but his only recourse under penalty of a misdemeanor is to take such person, without unnecessary delay, before a magistrate or deliver him to a peace officer.

■ The record discloses that at the time of the purported arrest the respondent was sitting behind the steering wheel of the car, with the motor running and the headlights on. He was clearly in actual physical control of the vehicle within the provisions of SDCL 32–23–1; and, if under the influence, susceptible to arrest by a private citizen. For this reason we disagree with the findings of the trial court that the arrest of the respondent was "unlawful."[3]

The question then is whether the request by the Chief of Police for chemical analysis was valid under SDCL 32–23. Provisions of SDCL 32–23–10 clearly require the chemi-

---

1. *State v. Zdovc*, 106 Ohio App. 481, 151 N.E.2d 672 (1958); *Smith v. Hubbard*, 253 Minn. 215, 91 N.W.2d 756 (1958). See also 5 Am.Jur.2d Arrest § 50, p. 742.

2. SDCL 23–22–2; *State v. O'Kelly* (Iowa) 211 N.W.2d 589 (1973); *People v. Martin*, 225 Cal. App.2d 91, 36 Cal.Rptr. 924 (1964).

3. The issues of physical control of the vehicle and the implication of the implied consent statute in such case, as opposed to actual operation of the vehicle, presently pending before this Court in other cases not having been raised at the trial level nor briefed nor argued in this case, we confine ourselves only to the issues raised herein and our decision is not to be construed as precedent either way on the issues not raised.

cal analysis test to be administered at the direction of a law enforcement officer having lawfully arrested such person. It is obvious that the legislature did not intend to authorize any citizen to implement the provision of the implied consent statute by demanding submission to a chemical analysis test. Therefore, as indicated by SDCL 32–23–10, the respondent's test must have been administered at the direction of a law enforcement officer in order to be valid.

 SDCL 23–3–27 defines law enforcement officer as "any employee or officer of the state or any political subdivision * * who is responsible for the prevention and detection of crime and the enforcement of the criminal or highway traffic laws of the state."[4] We hold that the police chief fits this definition, and that he can give the implied consent warning. To so hold would not allow every citizen in South Dakota to give the warning to people they arrest as civilians, but it would allow law enforcement officers who make legitimate private citizen arrests to give the implied consent warning. The arrest had to meet the requirements of a private citizen arrest; but, once it met those requirements, the Police Chief was qualified and legally entitled to give him the implied consent warning.

Since the record discloses that Chief of Police Westre made a valid citizen's arrest at the scene of the accident and at that time properly requested the respondent to submit to a chemical analysis test, we reverse and remand to the trial court for entry of judgment in accordance with this opinion.

DUNN, C. J., WOLLMAN, J., and FOSHEIM, Circuit Judge, concur.

ZASTROW, J., dissents.

FOSHEIM, Circuit Judge, sitting for PORTER, J., disqualified.

4. The definition of a law enforcement officer has been amended by the new criminal code in SDCL 22–1–2(20) which became effective Octo-

ZASTROW, Justice (dissenting).

I would affirm the decision of the trial court. "Peace officer" and "law enforcement officer" were intended to describe the same person, i. e., a duly appointed or elected officer acting within his jurisdictional limits as established by statute. Citizen Westre made the arrest of MacDonald; citizen Westre made the request for a chemical test. It was not a request made by a *law enforcement officer* who had made a lawful arrest. I do not believe that a city policeman who loses his status as a "peace officer" retains his status as a "law enforcement officer" under these circumstances. Certainly, the definition under SDCL 23–3–27 of those persons required to receive law enforcement training does not expand the jurisdiction of a city policeman.

ber 1, 1977. The change, however, does not affect the substance of the definition.