STATE OF CONNECTICUT *v.* FRANCES I. STEVENS
(9982)

O'CONNELL, NORCOTT and LANDAU, Js.

Argued October 29, 1991—decision released March 3, 1992

*William W. Fisher, Jr.,* for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *C. Robert Satti, Sr.,* state's attorney, and *Peter McShane,* deputy assistant state's attorney, for the appellee (state).

NORCOTT, J. This case requires us to consider the narrow issue of whether a Connecticut police officer, after having made a lawful arrest in Connecticut for operating a motor vehicle under the influence of alcohol, may thereafter gather evidence in a neighboring state when the arrestee has been transported there for medical care.

The defendant, Frances I. Stevens, appeals from a judgment of conviction, rendered after a jury trial, of assault in the second degree with a motor vehicle while intoxicated in violation of General Statutes § 53a-60d, and operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a. The defendant claims that the trial court

improperly failed (1) to find that her arrest was illegal and (2) to suppress evidence resulting from two sobriety tests and two blood tests, thereby denying her federal and state constitutional rights to due process. We affirm the trial court's judgment.

The following facts are relevant to this appeal. On January 31, 1990, the defendant, a Rhode Island resident, was driving her car accompanied by a dinner companion, Rose Buck, in the Pawcatuck section of Stonington at about 11 p.m. on a poorly lighted, narrow hilly road. The defendant had been drinking wine at a restaurant earlier that evening with Buck and another friend. Behind the defendant's car, Keith Beebe, an off duty Stonington police officer, was driving with a friend, Amos Steadman. The defendant's car rounded a curve on the two lane road and Beebe lost sight of it. As he reached the other end of the curve, he saw that the defendant's car had gone off the road and crashed into a tree. The car's front end was heavily damaged.

While Steadman went to summon help, Beebe tried unsuccessfully to open the car doors as Buck screamed in pain. While talking with the defendant, Beebe noticed that her eyes were bloodshot and glassy, her speech slurred. He smelled alcohol on her breath, and she told him she had been drinking wine that evening. At about 11:07 p.m., two on duty Stonington police officers, Randy Holt and Louis Diamanti, arrived. They also spoke with the defendant, smelled alcohol on her breath, noticed her glassy eyes and concluded, as did Beebe, that she was under the influence of alcohol. The defendant also told Diamanti that she had been drinking wine that evening.

At about 11:15 p.m., an ambulance came to take the women to the Westerly Hospital in Westerly, Rhode

Island, the closest medical facility.[1] Buck had suffered serious chest and rib injuries, and internal bleeding. She underwent surgery for removal of her spleen and remained in intensive care for three weeks thereafter. The defendant, after being fitted with a neck brace, was removed from the car and placed in an ambulance. Before the ambulance left, however, Diamanti entered the vehicle and conducted a horizontal gaze nystagmus test[2] to determine if the defendant was intoxicated. Because the results, along with his prior observations, led him to conclude that she was intoxicated, he then placed her under arrest at about 11:30 p.m. as she lay on a stretcher in the ambulance, waiting to leave for the hospital.[3]

Diamanti then rode to the hospital in the ambulance with the defendant. In the emergency room, a doctor examined her and told Diamanti she was suffering from chest bruises. At 12:07 a.m. on February 1, 1990, after the examination was completed, Diamanti gave the defendant *Miranda*[4] warnings. She was coherent and sitting upright in a bed at this time. Diamanti then asked if he could perform two more sobriety tests, and the defendant agreed.[5] He also read her Connecticut's

---

[1] The Rhode Island hospital is about five to ten minutes from the accident scene. The nearest medical facilities in Connecticut, Lawrence and Memorial Hospital in New London, and Backus Hospital in Norwich, are about twenty-five to thirty minutes away.

[2] A gaze nystagmus test is a method of detecting whether a person is under the influence of alcohol by observing the movement of the eyes. *State v. Henderson*, 114 Idaho 293, 302 n.1, 756 P.2d 1057 (1988) (Walters, J., pro tem., dissenting).

[3] Diamanti charged her with operating a motor vehicle under the influence of alcohol in violation of General Statutes § 14- 227a. Prior to trial, by way of an amended information, the state added the charge of assault in the second degree with a motor vehicle while intoxicated in violation of General Statutes § 53a-60d.

[4] *Miranda* v. *Arizona*, 384 U.S. 436, 467–73, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] Diamanti had the defendant recite the alphabet and perform a finger count test.

implied consent law[6] and offered her the chance to contact an attorney, which she chose not to do. When he requested that she submit to two blood tests, she voluntarily consented. At 1 a.m. and again at 1:30 a.m., blood was taken by the defendant's attending doctor, a physician licensed by the state of Connecticut. Diamanti then issued the defendant a summons. After the blood was sealed and placed in a kit Diamanti had brought from Stonington, he took it back to Connecticut for laboratory analysis. The first sample showed a blood alcohol level of .13; the second disclosed a .12 level. At trial, Sanders F. Hawkins, the state's chief toxicologist, estimated that at the time of the collision, the defendant's blood alcohol level was between .14 and .17.

I

The defendant claims that the trial court improperly failed to find that her arrest was illegal because Diamanti had no authority to act as a police officer in Rhode Island. We disagree.

The defendant relies on, inter alia, *State v. Kuskowski,* 200 Conn. 82, 85–86, 510 A.2d 172 (1986), and *State v. Carroll,* 131 Conn. 224, 230, 38 A.2d 798 (1944), for the proposition that General Statutes § 54-1f (a) and (b) do not permit Connecticut law enforcement officers to make warrantless arrests beyond the state's borders. Because Diamanti placed the defendant under arrest in Connecticut and not in Rhode Island, such reliance is misplaced. Except for a single statement in her brief that she was issued a summons in Rhode Island, the defendant makes no claim that she was placed under arrest in Rhode Island. Moreover, she does not provide us with citation of authority, nor does our independent research disclose any, for the proposition that an arrest occurs where a summons is issued.

---

[6] See General Statutes § 14-227b.

It is the generally accepted rule that the validity of an arrest is determined by the law of the state where the arrest was made. *United States* v. *Di Re*, 332 U.S. 581, 589, 68 S. Ct. 222, 92 L. Ed. 2d 210 (1948); *Williams* v. *Adams*, 436 F.2d 30, 32 (2d Cir. 1970). The validity of an arrest hinges on the existence of probable cause. *Brinegar* v. *United States*, 338 U.S. 160, 175–76, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); *State* v. *Lamme*, 216 Conn. 172, 178, 579 A.2d 484 (1990). In Connecticut, probable cause is required before an arrest may be made for operating under the influence of alcohol. See *State* v. *Gonzalez*, 210 Conn. 446, 460, 556 A.2d 137 (1989) (written report, pursuant to General Statutes § 14-227b [c], must set forth grounds for police officer's belief that probable cause existed to arrest for operating a motor vehicle while under the influence); *Volck* v. *Muzio*, 204 Conn. 507, 511, 529 A.2d 177 (1987) (license suspension hearing limited to determination of whether probable cause existed to arrest for operating under the influence).

"Probable cause, broadly defined, comprises such facts 'as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe' that criminal activity has occurred." *State* v. *Barton*, 219 Conn. 529, 548, 594 A.2d 917 (1991), quoting *Stone* v. *Stevens*, 12 Conn. 218, 230, 30 A. 611 (1837). It is a flexible common sense standard that does not require the police officer's belief to be either correct or more likely true than false. *Three S. Development Co.* v. *Santore*, 193 Conn. 174, 175, 474 A.2d 795 (1984). Probable cause for an arrest is based on the objective facts available to the officer at the time of arrest, not on the officer's subjective state of mind. *State* v. *Kaplan*, 20 Conn. App. 183, 186–87, 565 A.2d 11 (1989); see *Scott* v. *United States*, 436 U.S. 128, 138, 98 S. Ct. 1717, 56 L. Ed. 2d 168 (1978); *State* v. *Copeland*, 205 Conn. 201, 208 n.3, 530 A.2d 603 (1987).

" 'There must be facts and circumstances within the officer's knowledge, and of which he has trustworthy information sufficient to justify the belief of a reasonable person that an offense has been or is being committed.' " *State* v. *Kaplan,* supra, 187, quoting *State* v. *Copeland,* supra, 213; *Michigan* v. *DeFillippo,* 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979).

On the basis of the facts and circumstances as they appeared to Diamanti at 11:30 p.m. that night, the trial court properly found that probable cause existed to believe that the defendant had been operating under the influence of alcohol. Diamanti saw her heavily damaged car and spoke with her moments after the crash. He saw that her eyes were bloodshot and glassy, and he noticed her slurred speech and smelled alcohol on her breath. Further, the defendant told Diamanti that she had been drinking wine that evening, and had failed a sobriety test he conducted at the scene. Diamanti also had trustworthy information from Holt and Beebe, the off duty officer, who told him that they also had spoken with and observed the defendant moments before, and believed her to be under the influence of alcohol. We therefore conclude that the trial court properly found that Diamanti had lawfully arrested the defendant at the accident scene pursuant to General Statutes § 14-227a.

## II

The defendant next claims that the trial court improperly refused to suppress the results of sobriety tests Diamanti performed at the hospital, as well as the results of laboratory tests on her blood, which was drawn at the hospital, thereby denying her right to due process.

In explaining why we believe that Diamanti's gathering of evidence in Rhode Island was valid, we begin by examining his status when he acted in this case. As

a general rule, police officers acting outside their jurisdictions do not act in their official capacity, nor do they have official power to arrest. *People* v. *Vigil,* 729 P.2d 360, 365–66 (Colo. 1986); *State* v. *Hodgson,* 57 Del. 383, 385, 200 A.2d 567 (1964); *Nash* v. *State,* 207 So. 2d 104, 106 (Miss. 1968); *State* v. *Littlewind,* 417 N.W.2d 361, 363 (N.D. 1987); *State* v. *MacDonald,* 260 N.W.2d 626, 627 (S.D. 1977); *State* v. *Hart,* 149 Vt. 104, 106, 539 A.2d 551 (1987); see generally annot., 34 A.L.R. 4th 328.

Police officers acting outside their jurisdictions, however, generally have the same powers of arrest as do private citizens.[7] *State* v. *McCullar,* 110 Ariz. 427, 428, 520 P.2d 299 (1974); *State* v. *O'Kelley,* 211 N.W.2d 589, 595 (Iowa 1973), cert. denied, 417 U.S. 936, 94 S. Ct. 2652, 41 L. Ed. 2d 240 (1974); *State* v. *Schienle,* 218 Kan. 637, 640, 545 P.2d 1129 (1976); *Commonwealth* v. *Gullick,* 386 Mass. 278, 282, 435 N.E.2d 348 (1982); *People* v. *Meyer,* 424 Mich. 143, 154, 379 N.W.2d 59 (1985); *Windschitl* v. *Commissioner of Public Safety,* 355 N.W.2d 146, 149 (Minn. 1984); *State Department of Public Safety* v. *Juncewski,* 308 N.W.2d 316, 321 (Minn. 1981); *State* v. *Littlewind;* supra; *State* v. *Baton,* 488 A.2d 696, 700 (R.I. 1985); *State* v. *MacDonald,* supra, 627; see also 1 Restatement (Second), Torts § 121, comment a; see generally 6A C.J.S., Arrest § 12; 5 Am. Jur. 2d, Arrest § 50.

Numerous federal courts also recognize this principle. See *United States* v. *Hernandez,* 715 F.2d 548, 551

---

[7] The right of private citizens to make arrests dates from the Statutes of Winchester in 1285. 13 Edw. I, St. 2, c. 2 (1285); M. Bassiouni, Citizen's Arrest (1977) p. 9; H. Wilgus, "Arrest Without a Warrant," 22 Mich. L. Rev. 541, 545–48 (1924). This statute imposed a duty to drop all work and join immediately in the pursuit of offenders.

The first reported decision in the United States involving a citizen's right to make an arrest; *Wrexford* v. *Smith,* 2 Root 171 (1795); occurred in Connecticut. M. Bassiouni, supra, 27.

(11th Cir. 1983) (per curiam); *United States* v. *Ible,* 630 F.2d 389, 393 (5th Cir. 1980); *United States* v. *Swarovski,* 557 F.2d 40, 46–47 (2d Cir. 1977), cert. denied, 434 U.S. 1045, 98 S. Ct. 889, 54 L. Ed. 2d 796 (1978); *Ward* v. *United States,* 316 F.2d 113, 116–18 (9th Cir.), cert. denied, 375 U.S. 862, 84 S. Ct. 132, 11 L. Ed. 2d 89 (1963); *Monteiro* v. *Howard,* 334 F. Sup. 411, 415 (D.R.I. 1971).

When a police officer, acting as a private person, makes a lawful extraterritorial arrest for operating under the influence of alcohol, evidence resulting from various types of sobriety and chemical tests can be admissible at trial. See *Lofthouse* v. *Department of Motor Vehicles,* 124 Cal. App. 3d 730, 734, 177 Cal. Rptr. 601 (1981) (blood alcohol test); *People* v. *Gupton,* 139 Ill. App. 3d 530, 534, 487 N.E.2d 1060 (1985); *People* v. *Rowe,* 128 Ill. App. 3d 721, 724–25, 471 N.E.2d 578 (1984); *Windschitl* v. *Commissioner of Public Safety,* supra, 149 (blood test); *State Department of Public Safety* v. *Juncewski,* supra, 321 (preliminary screening test); *State* v. *Littlewind,* supra, 363–64 (intoxilyzer test); *Romo* v. *State,* 577 S.W.2d 251, 252 (Tex. Crim. App. 1979) (breathalyzer test); see also *State* v. *Russ,* 480 N.E.2d 248, 251 (Ind. App. 1985) (evidence derived from officer's observations); *State* v. *Halvorson,* 356 N.W.2d 376, 378 (Minn. App. 1984) (evidence derived from officer's observations); accord *State* v. *MacDonald,* supra, 628 (law enforcement officers who make legitimate extraterritorial arrests as private citizens entitled to give implied consent warning).

Although the cases cited above involve evidence gathering by police officers who have made citizens' arrests in adjoining jurisdictions within the same state, the same rationale permits police officers to enter another state, make arrests as private citizens and gather pertinent evidence. See, e.g., *State* v. *McCullar,* supra, 428–29 (Colorado police officers in Arizona);

*State* v. *O'Kelly,* supra, 595 (Nebraska police officer in Iowa); *Commonwealth* v. *Gullick,* supra, 284 (Massachusetts state trooper in New Hampshire); *State* v. *Baton,* supra, 702 (Rhode Island police officer in Connecticut); *State* v. *Bonds,* 98 Wash. 2d 1, 14, 653 P.2d 1024 (1982) (en banc) (Washington police officers in Oregon); see also *Stevenson* v. *State,* 287 Md. 504, 523–24, 413 A.2d 1340 (1980) (District of Columbia police officer in Maryland).

No meaningful distinction exists between the arrests and evidence gathering in these cases, and the arrest and evidence gathering in a situation such as the one before us, where the only difference is that the arrest already has occurred in the officer's home state and, by virtue of a medical emergency, he enters a neighboring state and immediately gathers vital evidence there. See *State* v. *Slawek,* 114 Wis. 2d 332, 336–37 n.1, 338 N.W.2d 120 (Wis. Ct. App. 1983).

The situation in this case is not unlike that in *State* v. *MacDonald,* supra. In *MacDonald,* a police chief's request for chemical testing after he had made a lawful extraterritorial arrest for driving under the influence was found to be valid, since by statute the chemical analysis was required to be administered at the direction of a law enforcement officer. The Supreme Court of South Dakota determined that the chief of police fell within the definition of a law enforcement officer for this purpose, and concluded that an officer who had made a valid citizen's arrest was qualified and legally authorized to give the implied consent warning. Id., 628.

The Illinois appellate courts reached similar results in *People* v. *Gupton,* supra, and *People* v. *Rowe,* supra. In *People* v. *Gupton,* supra, a police officer acting outside his jurisdiction was found to have made a citizen's arrest for driving under the influence. The court held

that under the state's implied consent statute, he was authorized in his capacity as a law enforcement officer to request the defendant to submit to blood and urine tests, and that the results of such tests were admissible as evidence at trial. Id., 534. In *People* v. *Rowe,* supra, the court also held under similar circumstances that evidence derived from breathalyzer tests could be admissible at trial in the absence of any due process violations. Id., 724.

The same reasoning applies with equal force in this case. General Statutes § 14-227a (c) requires that any blood samples be drawn "by or at the direction of a police officer." Here, although he was acting as a private citizen in Rhode Island, Diamanti nevertheless remained authorized in his capacity as a law enforcement officer to give the defendant Connecticut's implied consent warning, conduct sobriety tests and request that she submit to blood testing. Although a police officer who enters another jurisdiction is no longer cloaked with his official authority, he does not cease to be a person. See *State* v. *O'Kelly,* supra. Evidence is no less competent because of its source. *Nueslein* v. *District of Columbia,* 115 F.2d 690, 692 (D.C. App. 1940); *United States* v. *Lima,* 424 A.2d 113, 121 (D.C. App. 1980).

At trial, neither the court nor counsel was able to locate legal authority that prohibited Diamanti's actions in Rhode Island. The trial court therefore denied the defendant's motion to suppress. We conclude that the trial court properly denied the motion and found that Diamanti's actions in Rhode Island were entirely permissible under well established common law principles, and that the evidence derived therefrom was properly admissible at trial in the absence of any due process violations.

With respect to the defendant's claim of a due process violation, we find it to be without merit. It is well established that the protection of the fourth amendment to the United States constitution is applicable to actions by governmental officers, but that it is not triggered by the actions of private people, however egregious they may be. *United States* v. *Jacobsen,* 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984); *Walter* v. *United States,* 447 U.S. 649, 662, 100 S. Ct. 2395, 65 L. Ed. 2d 410 (1980) (Blackmun, J., dissenting); *Coolidge* v. *New Hampshire,* 403 U.S. 443, 488, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *Burdeau* v. *McDowell,* 256 U.S. 465, 475, 41 S. Ct. 574, 65 L. Ed. 1048 (1921); but see *State* v. *Brecht,* 157 Mont. 264, 270, 485 P.2d 47 (1971) (fourth amendment protects the right to privacy and is violated whether the intrusion is governmental or private). The actions of private people withstand not only fourth amendment scrutiny, but due process analysis as well. See *Colorado* v. *Connelly,* 479 U.S. 157, 166, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986). By no fiction whatsoever could the state be deemed responsible for wholly private conduct, since it would be impossible to train citizens in general on the highly technical rules fashioned under the fourth amendment. *United States* v. *Lima,* supra, 118 n.2. By contrast, however, where the private person "in light of all the circumstances of the case must be regarded as having acted as an 'instrument' or agent of the state," the fourth amendment is called into play. *Coolidge* v. *New Hampshire,* supra, 487; see *United States* v. *Seidlitz,* 589 F.2d 152, 158–59 (4th Cir. 1978), cert. denied, 441 U.S. 922, 99 S. Ct. 2030, 60 L. Ed. 2d 396 (1979).

Here, we believe that the fourth amendment clearly applies to Diamanti's actions in Rhode Island. Although he no longer was cloaked with the official authority of a police officer when he entered Rhode Island, it would

be disingenuous to think Diamanti was not acting as an agent or instrumentality of the police simply because he crossed the state line.[8]

Because nothing in the record indicates that either the defendant's arrest or the procurement of evidence in Rhode Island was orchestrated in such a manner as to intimidate or provoke her into giving her consent, we are not persuaded that she was denied due process. She was not threatened, tricked, cajoled or coerced. The trial court found that she was properly apprised of her rights, and that she thereafter knowingly and voluntarily consented to the sobriety tests and blood sampling.

We therefore hold that a Connecticut police officer, although not clothed with his official authority once he leaves the state, may gather evidence in another jurisdiction after having made a lawful arrest in Connecticut.

The continuing death, devastation and misery inflicted by intoxicated drivers, and the ever increasing emotional and financial costs of their behavior, which society must bear, have been well documented. See *Quinnett* v. *Newman,* 213 Conn. 343, 350 n.1, 568 A.2d 786 (1990) (*Peters, C. J.,* dissenting); *Shore* v. *Stoning-*

---

[8] Our conviction is bolstered by the views of a leading scholar in the field of extraterritorial police activity:

"If the [extraterritorial] arrest [by a governmental agent] was in violation of search and seizure standards, its results would be subject to the exclusionary rule, but if the arrest was valid then its consequences would be admissible. However, a governmental agent cannot operate outside his or her jurisdiction and benefit from a lesser legal threshold, seizing evidence by means of a search incidental to arrest which would not withstand constitutional scrutiny. Any contrary position would in fact restore the 'silver platter doctrine,' which at one time enabled federal and state officers to operate outside their jurisdictional authority and to avoid constitutional limitations on admissible evidence."

M. Bassiouni, Citizen's Arrest (1977), pp. 33–34.

*ton,* 187 Conn. 147, 162 n.2, 444 A.2d 1379 (1982) (*Peters, J.,* dissenting); *Nelson* v. *Steffens,* 170 Conn. 356, 364, 365 A.2d 1174 (1976) (*Bogdanski, J.,* dissenting). This has led every community to share a unitary interest in the swift apprehension and punishment of intoxicated drivers. This often depends, however, on the prompt, yet lawful, recovery of highly evanescent evidence stemming from sobriety and blood testing. A Connecticut police officer, after making a valid arrest in this jurisdiction for operating under the influence of alcohol, should not be prevented from lawfully acquiring evidence resulting from sobriety and blood tests simply because medical necessity dictates that the arrestee be taken to an out-of-state hospital. Under the circumstances of this case, we decline to so constrict the police function of postarrest investigation such that the administration of justice becomes no more than an exercise in futility.

The judgment is affirmed.

In this opinion the other judges concurred.