[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO SUPPRESS
This case requires the Court to determine whether Connecticut general Statutes Section 14-227a(1) is unconstitutional as depriving a person injured and hospitalized as a result of a motor vehicle accident of equal protection and due process of law and/or because of discrimination against him in violation of both the state and federal constitution.
For purposes of the Motion to Suppress the parties entered into a Stipulation of Facts dated May 15, 1992 which set forth the following facts:
1. On or about Sunday, July 21, 1991, at 12:45 a.m., the defendant, Peter J. Haselman, sustained serious physical injuries as a result of a motorcycle — motor vehicle accident.
2. The injuries which Mr. Haselman sustained included a fractured arm and a fractured foot.
3. The injuries which Mr. Haselman received prevented him from standing or walking. Mr. Haselman could not drive a car; nor could he work or otherwise care for himself at any of the times hereinafter mentioned.
4. The injuries which Mr. Haselman received would prevent him from standing, walking, driving a car, working or otherwise caring for himself for a period of time in excess of 45 days.
5. The injuries which Mr. Haselman received still prevent him from working and can be expected to do so for another 3 to 4 months time. CT Page 8269
6. Mr. Haselman was put on a stretcher, placed in an ambulance and transported to the Wm. W. Backus Hospital.
7. Subsequent to his admission to the hospital, blood was drawn from Mr. Haselman in the regular course of business for the hospital for the diagnosis and treatment of Mr. Haselman's injuries. The blood was drawn by a person licensed to practice medicine and surgery in this state, a resident physician or intern in a hospital in this state, a qualified laboratory technician, an emergency medical technician II or a registered nurse.
8. Mr. Haselman was not advised that blood would be drawn from him as a result of his admission. He did not give his consent to his blood drawn. At the time the blood was drawn, he was not advised that his blood would be tested for its alcohol content nor was he advised that the results of any such test could be subpoenaed by the State Police and used as evidence against him in a subsequent prosecution for driving while intoxicated.
9. Mr. Haselman was not given an opportunity to telephone an attorney prior to his blood being drawn or tested.
10. At the time Mr. Haselman's blood was drawn and tested, Mr. Haselman was conscious and alert. He was capable of either consenting, or refusing to submit, to a chemical analysis of this blood. He was capable of using a telephone and one was available for his use.
11. The device used to test Mr. Haselman's blood was not checked for accuracy immediately before the test was performed.
12. The device used to test Mr. Haselman's blood was not checked for accuracy immediately after the test was performed.
13. An additional chemical test of the same type was not performed at least thirty minutes after the initial test was performed.
A hearing was held in this Court on August 21, 1992 at which the State and the Defendant were represented by Counsel and oral argument was presented.
The defendant also filed a brief on August 21, 1992 in support of his claims which is on file. CT Page 8270
The State in their oral argument advanced the proposition that the State has compelling interests in questions relating to intoxicated motor vehicle operators citing the case of State v. Stephens, 26 Conn. App. 805, 817, where the Connecticut Appellate Court said "the continuing death, devastation, and misery inflicted by intoxicated drivers, and the ever-increasing emotional and financial cost of their behavior, which society must bear, have been well documented. (Citations omitted). . . This has led every community to share a unitary interest in the swift apprehension and punishment of intoxicated drivers. This often depends, however, on the prompt, yet lawful, recovery of highly evanescent evidence stemming from sobriety and blood testing. . ."
With regard to the defendant's claim that he was rendered "physically disabled" by reason of his injury and its effects the State claims that Section 1-1f(b) of the Connecticut General Statutes (hereafter C.G.S.) defines a physically disabled person as "an individual is physically disabled if he has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or relying on a wheelchair or other remedial appliance or device." The Assistant State's Attorney argues in this case that nothing in the Stipulation of Facts suggests that the defendant's injuries created a "chronic" condition which is a condition of long duration, continuing and constant.
The defendant's constitutional claim brings into question the disparate treatment of individual's whose blood alcohol level is to be tested depending upon whether it is tested by the police in the ordinary situation or, on the other hand, whether the test is done in a treating hospital for a person injured in an automobile accident. In the more typical situation where the police conduct testing to determine blood alcohol level for purposes of a prosecution under Section 14-227a the procedure is controlled by the provisions of Section 14-227a(c) C.G.S. That law provides as follows:
 Evidence respecting the amount of alcohol . . . in the defendant's blood at the time of the alleged offense, as shown by a chemical analysis of the defendant's blood . . . shall be admissible and competent provided: (1) the defendant was afforded a reasonable CT Page 8271 opportunity to telephone an attorney prior to the performance of the test and consented to the taking of the test upon which such analysis is made; (2) a true copy of the report of the test was mailed to or personally delivered to the defendant within 24 hours or by the end of the next regular business day, after such result was known, whichever is later; (3) the test was performed by or at the direction of a police officer according to methods and equipment approved by the Department of Health Services and was performed by a person certified or recertified for such purpose by said department or recertified by persons certified as instructors by the Commissioner of Health Services. If a blood test is taken, it shall be on a blood sample taken by a person licensed to practice medicine and surgery in this state, a qualified laboratory technician, an emergency medical technician II or a registered nurse; (4) the device used for such tests was checked for accuracy immediately before and after such test was performed by a person certified by the Department of Health Services; (5) an additional chemical test of the same type was performed at least 30 minutes after the initial test was performed; and (6) evidence is presented which demonstrates that the test results in the analysis thereof accurately reflect the blood alcohol content at the time of the alleged offense.
If on the other hand the operator of the motor vehicle is taken to a hospital because he has suffered or allegedly suffered a physical injury in an accident, subsection (1) of Section 14-227a C.G.S. provides for the use of the blood alcohol level test as evidence only if the following precautions were taken:
 (1) The blood sample was taken in the regular course of business of the hospital for the diagnosis and treatment of such injury; (2) the blood sample was taken by a person licensed to practice medicine in this state, a qualified laboratory technician, an emergency technician II or a registered nurse; (3) a police officer as demonstrated to the satisfaction of a Judge of the Superior Court CT Page 8272 and such officer has reason to believe that such person was operating a motor vehicle while under the influence of intoxicating liquor . . . in violation of subsection (a) of Section 14-227a; and (4) such Judge has issued a search warrant in accordance with Section 54-33a authorizing the seizure of the chemical analysis of such blood sample.
It can be seen, as the defendant plainly claims in his brief and oral argument, that the law provides different standards for a determination of admissibility of evidence depending upon whether the blood alcohol content (BAC) was obtained by the police or whether it was taken by the hospital in connection with the treatment for an injury.
Because of these differences in treatment, the defendant claims five constitutional violations:
1. The 14th Amendment of the United States Constitution because it would deny the defendant life, liberty or property without due process of law.
2. Article First, Section 8 of the Connecticut Constitution because it would deny the defendant life, liberty or property without due process of law.
3. The 14th Amendment of the United States Constitution because it would deny the defendant equal protection of the laws.
4. Article First, Section 20 of the Connecticut Constitution in that it would deny the defendant equal protection of the law.
5. Article First, Section 20 of the Connecticut Constitution because it would subject the defendant to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of a physical or mental disability.
The 14th Amendment of the United States Constitution provides, in relevant part, as follows: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."
Article First, Section 20 of the Connecticut Constitution provides in pertinent part as follows: "No person shall be denied equal protection of the law . . . because of physical disability." CT Page 8273
Article First, Section 8 of the Connecticut Constitution provides in pertinent part as follows: "No person shall . . . be deprived of life, liberty or property without due process of law."
The defendant's analysis of his claims under these constitutional provisions are divided into two sections: 1) Equal Protection (pages 5-15 of brief) and 2) Discrimination on the basis of physical disability (pages 15-17 of brief). The court will follow a similar format.
EQUAL PROTECTION
The first claim involves the equal protection argument. It is well settled that parties challenging the constitutionality of a Statute have the burden of showing its invalidity beyond a reasonable doubt. McKinney v. Coventry,176 Conn. 613, 621 (1979). "Most laws classify and many effect groups unevenly," Keogh v. Bridgeport, 187 Conn. 53,66 (1982). The equal protection provisions of the Federal and State Constitutions have the same meaning and limitations. E.g., Eielson v. Parker, 179 Conn. 552, 562
(1980). When the statutory classification impinges upon an inherently suspect class or affects a fundamental personal right, the statute is subject to strict scrutiny and is justified only by a compelling State interest. E.g., Frazier v. Manson, 176 Conn. 638, 645 (1979). Otherwise, a statute will stand if the classification bears a reasonable relation to a legitimate state interest. State v. Davis, 190 Conn. 327
(1983); United Aluminating Co. v. New Haven, 179 Conn. 627,636 (1980).
In this case Section 14-227a C.G.S. distinguishes in its treatment of evidence between those persons whose blood alcohol level is tested by police personnel in a police station environment and those whose blood alcohol level is tested by a blood test taken in a treating hospital.
The defendant in his argument does not acknowledge, however, that there are several safeguards which are present in subsection (1) which are not present in subsection (c). First, there is the use of hospital equipment used in the testing, not a kit in a police lock-up. Secondly, there is a limitation on the person who can take the test — a professional person not including a "certified or recertified" police officer. Thirdly, this challenged section of the law only applies to situations where the police have "demonstrated to the satisfaction of a judge of the Superior Court that such person was operating . . . while under the CT Page 8274 influence. . ." Fourth, there is the safeguard that a judge must have issued a search warrant in accordance with Section54-33a C.G.S.
The comparison drawn by the defendant is between accused persons in very different situations. The hospitalized person who is covered by subsection (1) has had probable cause found; he has had his blood test done in a hospital in the regular course of business which must be licensed and regulated as provided by law. (Section 19a — 491 C.G.S.); he has had the blood sample taken by a professional not a policeman; and the test was done in the private sector, not as state action or under color of law.
Under these circumstances, this Court finds that even if appropriately applied, the rational relationship test has been satisfied and a compelling state interest to has shown. This is particularly true where as indicated above it has been consistently held that every statute is presumed to be constitutional. Heslin v. Connecticut Law Clinic of Trantolo Trantolo, 190 Conn. 510, 522 (1983).
This claim must also fail for a different, second reason. The defendant blood alcohol level was tested by a hospital in the ordinary course of business for the diagnosis and treatment of his injuries. The defendant cites no case to support a claim that either the State or Federal constitution protects the defendant from the actions of hospitals in the treatment of patients. The blood was not drawn as a result of state action. The challenged law provides merely for the admissibility and competence of the results of those tests which meet its standards. This is not a conclusive presumption case. See State v. Watson,165 Conn. 577, 597 (1973). This is an evidentiary rule. Our statutes contain other provisions for the use of hospital records in evidence which the defendant does not challenge. See Section 4-104, C.G.S. and Section 52-180, C.G.S. and Section 52-180a, C.G.S.
DISCRIMINATION/PHYSICAL DISABILITY
The second argument advanced by the defendant (pages15-17 of defendant's brief) relates to discrimination on the basis of physical disability.
With regard to the allegations that Article First, Section 20 of the Connecticut Constitution provides protection against discrimination on the basis of physical disability, suffice it to note that the Court is not satisfied that the defendant under the stipulation involved CT Page 8275 in this case was physically disabled. Nor does the Court find the constitutional provision to have been designed to protect against rules relating to the admission of hospital records in evidence at trial.
Under Connecticut law physical disability is defined, as indicated above, in Connecticut General Statutes Section1-1f. The Stipulation does not place the defendant into that group of persons who fit under that definition. There is no suggestion that he has a "chronic" condition of disability resulting from the automobile accident. The language of the Statute does give us some assistance in determining the persons intended to be included as "physically disabled". It specifically does not include persons who are suffering a temporary injury from a motor vehicle accident (especially one who fits into the situation described where the "police officer has demonstrated to the satisfaction of a Judge of the Superior Court that such officer has reason to believe that such person was operating a motor vehicle while under the influence of intoxicating liquor . . . in violation of subsection a of Section 14-227a and . . . such Judge has issued a search warrant . . ." Section 14-227a C.G.S.).
The attempt by the defendant to use the federal Equal Opportunities For Individuals with Disabilities definition contained at 42 U.S.C. § 12102 on the basis of a claim of federal supremacy is simply untenable. Even if it were otherwise to apply, nothing in that law suggests that the definition should be one of general application. The Connecticut legislature, on the other hand, has adopted its definition of general applicability as above. This court is not persuaded that the federal equal opportunities definition is more appropriate in the determination of a Connecticut constitutional issue.
Accordingly, the Court finds that it has not been established that the defendant in this case has been subject to segregation or discrimination because of physical or mental disability in violation of Article First, Section 20
of the Connecticut Constitution.
The defendant's Motion to Suppress the evidence respecting the amount of alcohol or drug in the defendant's blood or urine at the time of the alleged offense as shown by a chemical analysis of the defendant's blood, breath or urine is denied.
Leuba, J. CT Page 8276